No. 98-731

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 210

VERA PARKER-BIGBACK,

Plaintiff and Appellant,

v.

ST. LABRE SCHOOL,

Defendant and Respondent.

APPEAL FROM: District Court of the Sixteenth Judicial District,

In and for the County of Rosebud,

The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kenneth D. Peterson, Peterson and Schofield, Billings, Montana

For Respondent:

Renee L. Coppock, Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P.,

Billings, Montana

For Amici:

William P. Driscoll, Gough, Shanahan, Johnson & Waterman, Helena,

Montana (Diocese of Helena)

Gregory Hatley and Tiffany B. Lonnevik, Davis, Hatley, Haffeman &

Tighe, P.C., Great Falls, Montana (Diocese of Great Falls-Billings)

Argued: September 30, 1999

Submitted: October 21, 1999

Decided: August 8, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 Vera Parker-Bigback (Bigback) brought this action in the District Court for the Sixteenth Judicial District in Rosebud County to recover damages from the Defendant, St. Labre School, for discriminatory termination of her employment. The District Court awarded summary judgment to St. Labre School. Bigback appeals the District Court's order awarding summary judgment. We affirm the judgment of the District Court.

¶2 The sole issue on appeal is whether the District Court erred when it awarded summary judgment to St. Labre?

FACTUAL BACKGROUND

¶3 St. Labre is a school operated by the St. Labre Indian School Educational Association, an institution based on the teachings and beliefs of the Roman Catholic Church. Bigback was employed to teach at St. Labre in August 1981. In 1988, she became St. Labre's employee assistance counselor and continued in that capacity until January 1993, when her employment with St. Labre was terminated. Bigback believes she was terminated because her supervisor, Father Emmett Hoffman, did not approve of her cohabitation with a man to whom she was not married, contrary to Roman Catholic moral teachings. According to St. Labre, however, Bigback's employee assistance counselor position was discontinued at that time and replaced with a personnel department.

¶4 Bigback filed a complaint with the Montana Human Rights Commission (MHRC) in which she alleged that St. Labre discriminated against her when it terminated her employment. The MHRC subsequently issued Bigback a right-to-sue letter and she filed a complaint in the District Court. Bigback's complaint alleged that St. Labre violated §§ 49-2-303 and -301, MCA, because her termination was based on marital status or sex discrimination and was in retaliation for her testimony given in a friend's discrimination proceeding against St. Labre. St. Labre answered the complaint and the parties conducted discovery. St. Labre subsequently moved for summary judgment and the District Court granted the motion on the basis that Bigback's claim would interfere with the "Free exercise" clause of the First Amendment to the United States Constitution. Bigback now appeals the judgment of the District Court.

## STANDARD OF REVIEW

¶5 Our standard of review on appeal from summary judgment orders is de novo. *See Motarie v. Northern Montana Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. We review a district court's summary judgment to determine whether it was correctly decided pursuant to Rule 56, M.R.Civ.P., which provides that summary judgment is only appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See Motarie*, 274 Mont. at 242, 907 P.2d at 156.

## DISCUSSION

¶6 Did the District Court err when it awarded summary judgment to St. Labre?

¶7 Bigback asserts that the District Court erred when it awarded summary judgment to St. Labre School. Bigback contends that she was a member of a protected class and that the decision to eliminate her position was made based upon her marital status. Bigback asserts that St. Labre's statement that her position was eliminated to establish a personnel department is merely "a pretext for terminating her because of her lifestyle." Bigback contends that the real reason for eliminating her position "was that at the time the decision was made she was living with someone who was not her husband."

¶8 In response, St. Labre contends it had the right to terminate Bigback's employment following her admitted failure to conform her conduct to Catholic moral values. St. Labre

points out that Bigback agreed in writing to conform her conduct to the church's teachings.

¶9 Section 49-2-303, MCA, provides:

(1) It is an unlawful discriminatory practice for:

(a) an employer to refuse employment to a person, to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment because of race, creed, religion, color, or national origin or because of age, physical or mental disability, *marital status*, or sex when the reasonable demands of the position do not require an age, physical or mental disability, marital status, or sex distinction . . . .

(Emphasis added.)

¶10 Although Bigback did not allege the factual basis of her claim in her complaint, she did testify by deposition. In her deposition, she stated she was hired at St. Labre School in 1981 as a first grade teacher, but assumed the position of employee assistance program director and school counselor in 1988. She held that position until she was terminated from employment in mid-February 1993.

¶11 Bigback was married from 1974 to 1984 and remarried some time subsequent to her termination from employment. She was married at the time of the deposition on July 17, 1995. Therefore, while employed at St. Labre School there were periods of time when she was married and other times when she was single. She was married when she was hired and single when she was terminated. However, she did not claim to have been terminated because she was single. In fact, she had been single for nine years by the time she was terminated.

¶12 When asked during her deposition if she felt there was any personal reason for the termination of her employment, she stated that she believed it was because of Father Emmett Hoffman's disagreement with her lifestyle-"living with someone-." As previously noted, when she assumed the position of employee assistant program director and school counselor, she signed an employment contract in which she agreed:

4. To conform to and abide by all of the moral and religious teachings and beliefs of the Roman Catholic Church and not to engage in any personal conduct or lifestyle

which would be at variance with or contrary to the policies of the school and the Diocese of Great Falls-Billings or the moral and religious teachings of the Roman Catholic Church.

¶13 Reverend Gilbert Hemauer who was the Chief Executive Officer of St. Labre at the time of his deposition on July 17, 1995, and who was a member of the Roman Catholic clergy with a long-term association with St. Labre School, testified that the school is a Catholic Mission administered by the Great Falls-Billings Diocese of the Catholic Church which espouses the teachings and beliefs of the Catholic faith. He also testified that it is important that the school's administrative employees demonstrate a lifestyle which reflects the beliefs of the Roman Catholic Church if they are to serve as role models for the children educated at the school and that it is inconsistent with the church's teachings for a person to cohabit with someone of the opposite sex to whom she is not married.

¶14 Accepting Bigback's claim as true for purposes of the summary judgment motion (even though St. Labre School denies she was terminated because of her cohabitation), we conclude that her termination had nothing to do with her marital status, it was based on her conduct.

¶15 In other words, based on the facts in this case, it would have made no difference whether Bigback was married or single. If she had cohabited with someone of the opposite sex to whom she was not married, the same result would have occurred. She would have engaged in personal conduct at variance with and contrary to the moral and religious teachings of the Roman Catholic Church.

¶16 No authority has been offered to suggest that either Article II, Section 4 of the Montana Constitution, which prohibits discrimination against people based on various characteristics or beliefs, or § 49-2-303, MCA, prohibit discrimination based on a person's conduct. Nor has any authority been offered to persuade us that Bigback's conduct at issue involved a right of such high order that it would overcome the school's right to freely exercise its religion through its employment practices as guaranteed by the First Amendment to the United States Constitution and our decision in *Miller v. Catholic Diocese of Great Falls, Billings* (1986), 224 Mont. 113, 728 P.2d 794.

¶17 Therefore, based on Bigback's allegations as demonstrated by her deposition testimony, we see no need to balance those religious rights upon which the District Court based its decision against Bigback's right to be free from discrimination based on marital

status or her gender. This case is not about marital status or gender. It is about conduct which Bigback agreed to avoid when she signed her employment agreement with St. Labre School. Even if she was terminated for the reason alleged, we conclude that her rights to be free from discrimination were not involved.

¶18 We note that neither is it necessary to address Bigback's alternative claim that she was terminated from employment in retaliation for assisting a fellow employee with that person's complaint to the Human Rights Commission. Although Bigback did allege in her complaint that she was alternatively terminated in violation of § 49-2-301, MCA, for assisting Jeanie Hanic with her complaint, that claim has been abandoned by Bigback on appeal and has neither been briefed nor argued.

¶19 For these reasons, we affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

Justice Karla M. Gray, specially concurring.

¶20 I concur in the Court's overall result on both Bigback's discrimination claim and her retaliation claim. However, I would reach both results under different analyses than those used by the Court.

¶21 In moving for summary judgment, St. Labre asserted that the District Court's exercise of jurisdiction over the case would violate its right to free exercise of religion under the United States and Montana Constitutions and, alternatively, that Bigback could not establish a *prima facie* case of discrimination under §§ 49-2-303 and 49-2-301, MCA. The District Court concluded it could not hear the case without interfering with St. Labre's legitimate claim to free exercise of religion and granted St. Labre summary judgment on that basis. As a result of its conclusion on the threshold constitutional freedom of religion

issue, the court did not address St. Labre's alternative argument. Bigback contends the District Court erred in granting summary judgment to St. Labre. St. Labre argues, on the other hand, that the District Court correctly granted summary judgment based on its constitutional right to free exercise of religion and also reiterates its alternative argument that Bigback cannot establish a *prima facie* case of discrimination.

¶22 We previously have set forth two tests under which summary judgment motions in discrimination cases are to be analyzed. One test, developed in Heiat v. Eastern Montana College (1996), 275 Mont. 322, 912 P.2d 787, is applied in cases where the employer's alleged discriminatory intent can be established only through circumstantial evidence. Reeves v. Dairy Queen, Inc., 1998 MT 13, ¶ 15, 287 Mont. 196, ¶ 15, 953 P.2d 703, ¶ 15. The other test is applied in what are termed "direct evidence" cases, where the reason for the employer's action is not disputed, but the parties dispute whether the action constitutes illegal discrimination. Reeves, ¶¶ 16-18. Here, the parties dispute the reason for Bigback's termination and, consequently, this is a circumstantial evidence case which must be analyzed under the Heiat summary judgment test.

¶23 Under the Heiat test applicable to an employer's summary judgment motion in a circumstantial evidence discrimination case, the plaintiff's complaint first must allege a *prima facie* case of discrimination. Heiat, 275 Mont. at 331, 912 P.2d at 793. A *prima facie* case of discrimination is sufficiently stated via allegations that the plaintiff is a member of a protected class, the plaintiff was performing her job satisfactorily and the employer engaged in specified conduct which constituted discrimination against plaintiff as part of the protected class. See Heiat, 275 Mont. at 331, 912 P.2d at 793; Reeves, ¶ 21; Clark v. Eagle Systems, Inc. (1996), 279 Mont. 279, 286, 927 P.2d 995, 999. If a *prima facie* case is alleged, the employer must come forward with a legitimate nondiscriminatory reason for the action at issue. Heiat, 275 Mont. at 331, 912 P.2d at 793. If the employer establishes a nondiscriminatory reason, the plaintiff then must produce evidence that establishes her *prima facie* case, as well as evidence which raises an inference that the employer's asserted nondiscriminatory reason is pretextual. Heiat, 275 Mont. at 331-32, 912 P.2d at 793.

¶24 Against this backdrop, it is my view that the proper approach in this case is to review Bigback's four-paragraph complaint in the District Court to determine whether it alleges a *prima facie* case of marital status or sex discrimination or retaliation. The first paragraph of Bigback's complaint alleges the beginning and ending dates of her employment with St. Labre, that the MHRC issued her a right-to-sue letter and that the complaint is filed

pursuant to § 49-2-509, MCA. The right-to-sue letter was attached and incorporated into the complaint; it contained no factual allegations. The second paragraph of Bigback's complaint states--correctly--that § 49-2-303, MCA, prohibits discrimination in employment on the basis of marital status and sex and § 49-2-301, MCA, prohibits retaliation against an employee for being a witness or opposing any practices prohibited by the statutes regarding discriminatory practices. The paragraph then alleges Bigback assisted Jeanne Hanic in filing a complaint against St. Labre with the MHRC and was a witness on Hanic's behalf in that proceeding. Finally, the paragraph alleges in one sentence that Bigback "was terminated because of her marital status, sex or retaliation or all three." The third paragraph of Bigback's complaint sets forth the relief sought in the form of injunctive relief and monetary damages, and the fourth paragraph requests attorney fees and costs.

¶25 With regard to the allegation of marital status and sex discrimination, Bigback's complaint does not allege any conduct on the part of St. Labre which would constitute such discrimination. As stated above, to allege a *prima facie* case of discrimination, the complaint must allege specified conduct which forms the basis for the alleged discrimination. See Heiat, 275 Mont. at 331, 912 P.2d at 793; Reeves, ¶ 21; Clark, 279 Mont. at 286, 927 P.2d at 999. Absent any factual allegations regarding conduct by St. Labre which constituted marital status or sex discrimination, Bigback's complaint fails to allege a *prima facie* case of marital status or sex discrimination under § 49-2-303(1)(a), MCA, as required by the first prong of the Heiat test and I would resolve her discrimination claim on that basis, rather than proceeding to the merits as the Court does in reliance on her deposition testimony.

¶26 With regard to Bigback's retaliation claim, I disagree that she abandoned it on appeal. While the retaliation claim is certainly not the focal point of Bigback's brief, she does quote the retaliation statute and asserts she was retaliated against. St. Labre responds that the record contains no evidence supporting the retaliation claim. Therefore, it is my view that this claim should be addressed and resolved under the Heiat test.

¶27 Bigback's complaint alleges that she was terminated in retaliation for assisting with, and being a witness in, Hanic's human rights complaint against St. Labre. I conclude that this sufficiently alleges a *prima facie* case of retaliatory termination under § 49-2-301, MCA, to satisfy the first prong of the Heiat test. As a result, St. Labre is required to come forward with evidence establishing a legitimate nondiscriminatory--or nonretaliatory-- reason for Bigback's termination. See Heiat, 275 Mont. at 331, 912 P.2d at 793. In support

of its summary judgment motion, St. Labre submitted the deposition of Fr. Hoffman, Bigback's supervisor at St. Labre. Fr. Hoffman testified that Bigback was not actually terminated but, because Fr. Hoffman believed that Bigback's employee assistance counselor position was no longer effective, her position was eliminated in favor of establishing a more formal personnel department. Fr. Hoffman further testified that, at the time Bigback's employment with St. Labre ended, he was not aware that she had been involved with--or a witness in--Hanic's human rights complaint and, accordingly, that was not the reason her position was eliminated. I conclude Fr. Hoffman's testimony establishes a legitimate nondiscriminatory reason for Bigback's termination and satisfies the second prong of the Heiat test. The burden then shifts back to Bigback to produce evidence establishing a *prima facie* case of retaliation and raising an inference that St. Labre's stated reason for her termination is pretextual. Heiat, 275 Mont. at 331-32, 912 P.2d at 793. On this record, Bigback did not meet her burden.

¶28 Susan Schipman, Fr. Hoffman's executive secretary, testified via her deposition that she knew Bigback had assisted with and testified in Hanic's discrimination complaint and may have discussed other aspects of those complaint proceedings with Fr. Hoffman. She did not know, however, whether Fr. Hoffman was aware of Bigback's involvement in the proceedings. Bigback's deposition testimony stated she had never been told her position was eliminated as a result of her involvement in Hanic's discrimination complaint; nor could she state a reason why she believed she was terminated for that involvement. Finally, when asked whether anyone at St. Labre knew of her involvement in Hanic's complaint, she stated that Schipman "probably" knew, but she did not testify that Fr. Hoffman knew or even "probably" knew.

¶29 The third prong of the Heiat test, requiring the plaintiff to produce evidence establishing a *prima facie* case of discrimination, as well as evidence raising an inference of pretext, corresponds to the general Rule 56, M.R.Civ.P., burden on the nonmoving party to come forth with evidence raising a genuine issue of material fact to survive a motion for summary judgment. Heiat, 275 Mont. at 333, 912 P.2d at 794. In that regard, the evidence required to meet this burden and preclude summary judgment must be of a substantial nature; mere denial, speculation or conclusory statements are insufficient. McGinnis v. Hand, 1999 MT 9, ¶ 18, 293 Mont. 72, ¶ 18, 972 P.2d 1126, ¶ 18. Bigback presented no substantial evidence that Fr. Hoffman was aware she assisted with, and was a witness in, Hanic's discrimination complaint, let alone that her involvement was the basis for her termination from St. Labre. At most, her evidence in this regard was mere speculation and insufficient to meet her burden of presenting evidence establishing a

*prima facie* case of retaliation and raising an inference of pretext as required under the third prong of the Heiat test.

¶30 On these bases, I join the Court in concluding that the District Court did not err in granting summary judgment to St. Labre on Bigback's claims.

/S/ KARLA M. GRAY

Justice W. William Leaphart, dissenting.

¶31 I dissent.

¶32 Vera Parker-Bigback (Bigback) started working at St. Labre as a teacher in 1981. She moved up to St. Labre's employee assistance counselor in January 1988, and remained in that position until January 1993 when she was terminated. Relying in part on the fact, established through deposition, that her supervisor, Father Emmett Hoffman, had, in 1992, expressed to Bigback his concern that her lifestyle (living with a man not her husband) did not reflect nor conform to Roman Catholic values and principles, Bigback filed suit for discrimination under § 49-2-303(1)(a), MCA, which makes it illegal to terminate an employee on the basis of marital status.

33 ¶Bigback was employed by St. Labre pursuant to a written contract by which she agreed to conform to and abide by all of the moral and religious teachings and beliefs of the Roman Catholic Church and not to engage in any personal conduct or lifestyle which would be at variance with or contrary to the policies of the School and the Diocese of Great Falls-Billings or the moral and religious teachings of the Roman Catholic Church.

¶34 Among other matters, the St. Labre Indian School Educational Employee Manual contains the following statement of policy:

## AFFIRMATIVE ACTION

St. Labre complies with Federal and State law regarding discrimination in employment. Applicants for employment shall be considered for employment, and employees shall hold employment, without discrimination because of age, sex, physical or mental handicap or marital status as required by the Montana Human Rights Act and the Federal Law.

35 Bigback argued to the District Court that St. Labre, through the statement of

nondiscrimination in its Employee Manual, put aside its constitutional shield to the free exercise of religion and consented to be governed by the secular rules regarding discrimination.

¶36 In reviewing St. Labre's motion for summary judgment, the District Court reviewed St. Labre's employee manual and the employment contract and noted the express language in the contract requiring Bigback "[t]o conform to and abide by all of the moral and religious teachings and beliefs of the Roman Catholic Church and not to engage in any personal conduct or lifestyle which would be at variance with or contrary to the policies of the School and the Diocese of Great Falls-Billings or the moral and religious teachings of the Roman Catholic Church." In light of this language, the court held that there is no question but that St. Labre reserved the right to require that Bigback's personal life conform with Catholic moral and religious teachings. Finally, the court concluded that, even if there were merit to Bigback's claim of discrimination, the constitutional guarantee of free exercise of religion overrides Bigback's right to be free from discrimination.

¶37 The District Court erred in interpreting the employment contract as reserving unto St. Labre the right to require that Bigback not cohabit with a man not her spouse. The court's conclusion is based upon the general contract provision requiring adherence to the moral and religious teachings of the Roman Catholic Church. In its rush to honor the constitutional right to free exercise of religion, however, the court overlooked the more specific provision of the contract that prohibits Bigback from engaging in any conduct or lifestyle which would be at variance with or contrary to the *policies* of the school. One of the stated policies of the school was that: "Applicants for employment shall be considered for employment, and employees shall hold employment, without discrimination *because of . . . marital status* as required by the Montana Human Rights Act and the Federal law." The contract does not purport to set forth or summarize what is encompassed within the "moral and religious teachings and beliefs" of the Roman Catholic Church. To the extent that the contract's generally stated moral imperative proscribes cohabitation with a non-spouse, it, at best, results in an ambiguity when read in context of the contract provision incorporating St. Labre's explicit policy of nondiscrimination on the basis of marital status. Uncertain terms in a contract are to be construed against the party causing the uncertainty. Mueske v. Piper, Jaffary & Hopwood, Inc. (1993), 260 Mont 207, 216, 859 P.2d 444, 449-50. In this case, that party is St. Labre.

¶38 Thus, although the moral teachings of the Church may disapprove of a single person cohabiting with someone of the opposite sex, the Church waived that objection when it

drafted a contract allowing Bigback to engage in a lifestyle so long as it was not at variance with the policies of the school. The fact that Bigback, a single woman, was living with a man is not at variance with school policy. Rather, it is entirely consistent with the school's policy of not discriminating on the basis of marital status.

¶39 The Court's opinion concludes that Bigback's termination had nothing to do with her marital status, rather it was based upon her conduct. I disagree. Her conduct was living with someone of the opposite sex. In order to determine whether that conduct offends the teachings of the Catholic Church, one must look to her marital status. If, as here, her marital status is single, then the conduct is offensive to the Church. If she is married, it depends upon to whom she is married. If she is married to the person with whom she cohabits, then the conduct comports with Church teachings. If she is married to someone other than the person with whom she cohabits, then the relationship is adulterous and offends another teaching of the Church. In my view, given Father Hoffman's expressed disapproval of Bigback living with a man without the benefit of marriage, her termination was about marital status.

¶40 The District Court invoked Miller v. Catholic Diocese of Great Falls (1986), 224 Mont. 113, 728 P.2d 794, for the proposition that the constitutional guarantee of free exercise of religion "shield from court review the conduct of religious entities to the extent such conduct is inextricably intertwined with the mission and teachings of the particular church." In Miller, this Court determined that it could not resolve the issue of good faith without examining the school's discipline policy as applied to classroom instruction and that "[s]uch an examination of necessity would impinge upon elements of the teaching of religion, or the free exercise of religion." Miller, 224 Mont. at 118, 728 P.2d at 797.

¶41 In contrast to Miller, the issue presented by Bigback can be resolved without examining or impinging upon the religious policies of the Church. The question is purely one of contract. The District Court should have denied the motion for summary judgment on the basis of contract law and should not have reached the constitutional issue of free exercise of religion. Had the District Court denied summary judgment and allowed Bigback to proceed with her discrimination claim, the court would not have interfered with the free exercise of religion. Rather it would have permitted resolution of an issue as to whether the Church was bound to honor the express terms of its own contract and employment policy.

¶42 I would hold that the District Court erred in granting summary judgment to St. Labre.

I would reverse the summary judgment, remand and allow Bigback to proceed with her discrimination claim. As to the retaliation claim, I concur with the Court's resolution of that issue.

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson joins in the foregoing dissent of Justice W. William Leaphart.

/S/ JAMES C. NELSON