No. 97-165

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 13


DONNA REEVES,

Plaintiff and Appellant,

v.

DAIRY QUEEN, INC., and
BARBER FOOD SERVICE CO., INC.,

Defendants and Respondents.



APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Scott L. Anderson, Dean D. Chisholm; Kaplan Law Offices,
Columbia Falls, Montana

For Respondents:

Randall A. Snyder; Snyder Law Office, Bigfork, Montana

For Amici Curiae:

Timothy C. Kelly, Special Assistant Attorney General, Chris
Fotopulos, Attorney at Law, Helena, Montana (for Montana Human
Rights Commission)

Mary Gallagher, Attorney at Law, Montana Advocacy Program,
Missoula, Montana



Submitted on Briefs:  December 11, 1997

Decided: January 30, 1998
Filed:


_____
Clerk
Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Appellant Donna Reeves (Reeves) appeals from the order of the Eleventh Judicial District Court, Flathead County, granting summary judgment for Respondents Dairy Queen, Inc. (Dairy Queen) and Barber Food Service Co., Inc.  We reverse.

¶2    Reeves raises the following issues:

¶3    1. Did the District Court err in granting summary judgment on Reeves' claim that she was terminated in violation of § 49-4-101, MCA?

¶4    2. Did the District Court err in granting summary judgment on Reeves' claim that Dairy Queen failed to provide reasonable accommodation?

                    Factual and Procedural Background

¶5    Reeves was hired by Dairy Queen on January 1, 1990, to work in its Columbia Falls restaurant.  She was hired and supervised by Bill Barber (Barber), general manager and majority owner of Barber Food Service Co., Inc., which owns Dairy Queen.  Reeves worked for Dairy Queen for five years and was regarded as an excellent employee.  She received pay raises and was eventually promoted to kitchen manager.

¶6    In the early 1980s, Reeves was diagnosed with high blood pressure.  As a result of her high blood pressure, Reeves suffers severe headaches, shortness of breath, heat sensitivity, and flushing.  During March 1994, two of Reeves co-workers informed Barber that Reeves had experienced dizziness while climbing atop a table to reach an item in the kitchen.  Barber had also noticed that at times, after performing simple tasks, Reeves became out of breath and flushed.  Barber stated in his deposition that he "could tell she was not doing well health-wise."

¶7    On April 19, 1994, Dairy Queen fired Reeves.  A few months later, Barber gave Reeves the following reference letter:

       This April (1994) we had to terminate Donna Reeves employment at
    the Columbia Falls Dairy Queen due to health reasons.  Donna worked here
    for 5+ years and was an excellent employee, but we felt that it was for her
    own well being that we let her go.  Without going into great detail, it was
    a combination of having high blood pressure and working in a position as
    a fast order cook working under conditions of pressure, stress and heat.
    We could see her health deteriorating and I decided this would be best for
    Donna.
          . . . .
Barber never spoke to Reeves about her medical condition or discussed the possibility of treatment for her illness or other accommodations.  Barber made no attempt to speak to Reeves' doctor, review her medical records, or investigate her medical condition.

¶8    On October 14, 1994, Reeves filed a complaint with the Montana Human Rights Commission (MHRC), alleging that she was discriminated against because of high blood pressure and other health problems.  The MHRC issued a "right to sue letter," and Reeves filed suit in the District Court.  In her complaint, Reeves alleged that Dairy Queen had fired her in violation of the Montana Human Rights Act, §§ 49-1-101 through 49-4-511, MCA, (the Act) and the Wrongful Discharge from Employment Act, §§ 39-2-901 through -915, MCA.  Dairy Queen moved to dismiss the wrongful discharge claim

and for summary judgment on the disability discrimination claim.

¶9   On March 10, 1997, the District Court issued an order holding that Reeves' wrongful discharge claim was barred by the one-year statute of limitations.  Reeves does not appeal from that decision.  The District Court also granted summary judgment on the discrimination claim.  The court held that, as a person suffering from high blood pressure, Reeves did not qualify as a member of a protected class under the Act.  The court found that Dairy Queen had a legitimate, business reason for firing Reeves -- that Reeves' high blood pressure had caused her work performance to deteriorate and had caused her to become a serious safety threat to herself and co-workers.  The District Court also held that Dairy Queen could not reasonably have accommodated Reeves.

Discussion
I. Standard of Proof

¶10   Reeves asks this Court to adopt a new standard of proof for disability discrimination cases in which the claim may be proven through direct, rather than circumstantial, evidence.  Reeves, joined by amici curiae Montana Advocacy Program and the MHRC, argues that the test currently employed by this Court is unnecessarily complicated in cases such as this, where the parties do not dispute the reason that the plaintiff was fired, but only whether such action constitutes illegal discrimination.

¶11   The parties state that this Court's decision in Hafner v. Conoco, Inc. (1994), 268 Mont. 396, 886 P.2d 947, sets forth the current law of disability discrimination in Montana.  In Hafner, the plaintiff claimed that Conoco had violated the Act by discriminating against him based on his disability, an arthritic knee.  Hafner, 886 P.2d at 950.  The parties filed cross-motions for summary judgment, and the district court granted summary judgment in favor of Conoco.  Hafner, 886 P.2d at 950.

¶12   This Court applied the three-step proof mechanism first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.  Hafner, 886 P.2d at 950.  Under this test, a person alleging discrimination must first demonstrate a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  If the plaintiff proves a prima facie case by a preponderance of evidence, the burden shifts to the employer to rebut the presumption of discrimination by producing a legitimate, non-discriminatory reason for the action.  McDonnell Douglas, 411 U.S. at 802.  Lastly, the plaintiff may prove that the employer's proffered reason is only pretext for discrimination; that is, that the reason is untrue and that the real reason is discriminatory.  McDonnell Douglas, 411 U.S. at 804.  Applying the McDonnell Douglas test, this Court held that the district court erred in finding that Hafner had failed to establish a prima facie case and that though Conoco had set forth a legitimate non-discriminatory reason for not hiring Hafner, Hafner had established a genuine issue of material fact regarding whether Conoco's reason was pretext.  Hafner, 886 P.2d at 953.

¶13   Since Hafner, this Court has decided Heiat v. Eastern Montana College (1996), 275 Mont. 322, 912 P.2d 787, in which we developed a different summary judgment standard of proof to be used in sex discrimination cases brought under Title VII.  We noted that when a motion for summary judgment is made by the defendant in a discrimination case, the McDonnell Douglas order of proof and shifting of burdens places the nonmoving plaintiff "in the peculiar position of having to prove her case to survive the defendant's motion."  Heiat, 912 P.2d at 792-93.  Thus, we set forth what we believed to be a more appropriate analysis: (1) the plaintiff must allege a prima facie case

of discrimination in the complaint; (2) the employer seeking summary judgment must then come forward with a legitimate, nondiscriminatory reason for its action; and (3) if the employer sets forth such a reason, the plaintiff must then produce evidence that establishes a prima facie case, as well as evidence which raises an inference that the employer's proffered reason is pretextual. Heiat, 912 P.2d at 793.

¶14 Although both parties cited Heiat, neither applied the Heiat summary judgment analysis to the facts of this case. Rather, both stated that Hafner represents the current law of disability discrimination in Montana, apparently assuming that the Heiat analysis is confined to cases brought under Title VII. To the contrary, the summary judgment burdens of proof discussed in Heiat apply in all types of discrimination cases regardless of whether the claims are based on federal or state law.

¶15 Having clarified the confusion arising from Hafner and Heiat, we now confine the three-part summary judgment test set forth in Heiat to those cases in which discriminatory intent can only be proven by circumstantial evidence (cases that require the McDonnell Douglas shifting burden analysis at trial). In cases involving direct evidence, such as this one, we adopt the following test used by an increasing number of federal courts.

¶16 Direct evidence cases are ones in which the parties do not dispute the reason for the employer's action, but only whether such action is illegal discrimination. In such cases, several courts have found that the McDonnell Douglas test is inappropriate and unduly confusing:

> [T]he [McDonnell Douglas] test is inappropriate for cases in which the employer acknowledges that it relied upon the plaintiff's handicap in making its employment decision. The McDonnell Douglas burden shifting approach is unnecessary because the issue of the employer's intent, the issue for which McDonnell Douglas was designed, has been admitted by the defendant in such cases, and the plaintiff has direct evidence of discrimination on the basis of his or her disability. Assuming that the plaintiff in such a case is in fact statutorily "disabled," the determinative disputed issue in the case will not be the employer's "intent," but instead in most cases will be whether the employee is "otherwise qualified," with or without reasonable accommodation, to perform the job, a factual dispute capable of resolution through traditional methods of proof.

Monette v. Electronic Data Systems Corp. (6th Cir. 1996), 90 F.3d 1173, 1182 (citations omitted); see also Healey v. Southwood Psychiatric Hosp. (3rd Cir. 1996), 78 F.3d 128; E.E.O.C. v. Alton Packaging Corp. (11th Cir. 1990), 901 F.2d 920. Thus, these courts have adopted new standards of proof in such cases for both summary judgment and trial.

¶17 At trial, if the plaintiff has established a prima facie case of unlawful discrimination with direct evidence, the employer must prove by a preponderance of the evidence that an unlawful motive played no role in the challenged action or that the direct evidence of discrimination is not credible and is unworthy of belief. See E.E.O.C., 901 F.2d at 925; Rule 24.9.610, ARM. Federal courts have also begun applying the traditional summary judgment principles to direct evidence discrimination cases, thus requiring the moving party to establish that no material issues of fact exist and that the movant is entitled to judgment as a matter of law. Healey, 78 F.3d at 130; Rule 56, Fed.R.Civ.P.

¶18 The Montana Administrative Rules has incorporated this simpler method of proof

for direct evidence discrimination cases. Rule 24.9.610(5), ARM. We agree that it is unduly confusing to apply the three-step McDonnell Douglas test, or the Heiat analysis for summary judgment, in cases in which the plaintiff presents direct evidence of discrimination. When both parties agree on the employer's articulated reason for firing the plaintiff and the only contested issue is whether the employer's action is illegal, it is illogical to require the plaintiff to prove that the articulated reason is pretextual. Thus, in direct evidence discrimination cases, we adopt the standard set forth in Rule 24.9.610(5), ARM, as the correct burden of proof at trial, and we employ the traditional proof requirements in motions for summary judgment. Accordingly, in a motion for summary judgment brought by an employer, the employer has the burden of showing that no issues of material fact remain and that the plaintiff cannot prove a prima facie case of discrimination as a matter of law.

¶19  In this case, the District Court found that "[a] discussion of pretext here is largely superfluous as there is no genuine dispute as to the grounds for the discharge." Barber's letter stated quite succinctly the reasons why Dairy Queen chose to fire Reeves: "Without going into great detail, it was a combination of having high blood pressure and working in a position as a fast order cook working under conditions of pressure, stress and heat. We could see her health deteriorating and I decided this would be best for Donna." Because Reeves attempts to prove her claim for discrimination with direct evidence, we apply the above-stated direct evidence standards of proof in reviewing the District Court's grant of summary judgment. We review a district court's grant of summary judgment de novo. Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785.

II. Application of the Standard to Reeves' Claims

¶20  A. Did the District Court err in granting summary judgment as to Reeves' claim that she was terminated in violation of § 49-4-101, MCA?

¶21  To prevail on its motion for summary judgment, Dairy Queen has the burden of showing that no issues of material fact remain and that Reeves cannot prove a prima facie case of discrimination as a matter of law. Under the Act,

> [i]t is unlawful to discriminate, in hiring or employment, against a person because of the person's physical disability. There is no discrimination when the nature or extent of the disability reasonably precludes the performance of the particular employment or when the particular employment may subject the person with a disability or that person's fellow employees to physical harm.

Section 49-4-101, MCA. Thus, to establish a prima facie case of discrimination, Reeves must show: (1) she belonged to a protected class; (2) she was otherwise qualified for continued employment and her employment did not subject her or others to physical harm; and (3) Dairy Queen denied her continued employment because of her disability. See Hafner, 886 P.2d at 950; §§ 49-4-101 and 49-2-303(1)(a), MCA.

1.  Member of a Protected Class

¶22  At the time of her discharge, Reeves suffered from high blood pressure and, as a result, experienced spells of dizziness, shortness of breath, bloodshot eyes, and flushing. To prove a prima facie case of discrimination, Reeves must show that because she suffers from high blood pressure, she is disabled and thus entitled to the protections of the Act. Hafner, 886 P.2d at 950. The District Court found that because Montana law has not established high blood pressure as a disability, Reeves is not entitled to protection under the Act. However, Reeves and the amici curiae argue that whether someone is disabled is an issue of fact that must be determined on a case-by-case basis.

¶23  Under the Act, a physical disability is defined as either "a physical or mental impairment that substantially limits one or more of a person's major life activities" or "a condition regarded as such an impairment."  Section 49-2-101(19)(a), MCA.  Reeves argues that she is disabled under either definition.  Because the Act is patterned after the federal Rehabilitation Act of 1973, this Court often looks to federal case law in interpreting its provisions.  Hafner, 886 P.2d at 950-51; McCann v. Trustees, Dodson School Dist. (1991), 249 Mont. 362, 364, 816 P.2d 435, 437.  Any physiological disorder or condition affecting the respiratory or cardiovascular systems is among the types of physical impairments included in federal disability discrimination laws.  29 C.F.R. § 1630.2(h)(1).  Neither party disputes that Reeves suffers from high blood pressure, a condition affecting her cardiovascular system, and that therefore she has a physical impairment under the Act.

¶24  A physical impairment is only considered a disability under the Act if the condition "substantially limits one or more of a person's major life activities."  Section 49-2-101(19)(a)(i), MCA.  Federal regulation defines "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," and this list is not exhaustive.  29 C.F.R. § 1630.2(h)(2)(i).  For example, sitting, standing, lifting, and reaching may also be considered major life activities.  S. Rep. No. 116, at 21 (1989).

¶25  Under federal law, the determination of whether an individual is substantially limited in a major life activity is one that must be made on a case-by-case basis.  As noted in the Equal Employment Opportunity Commission (EEOC) Interpretive Guidelines:
    The ADA [Americans with Disabilities Act] and this part, like the
    Rehabilitation Act of 1973, do not attempt a "laundry list" of impairments
    that are "disabilities."  The determination of whether an individual has a
    disability is not necessarily based on the name or diagnosis of the
    impairment the person has, but rather on the effect of that impairment on
    the life of the individual.

EEOC Interpretive Guidelines, 29 C.F.R. § 1630.2(j), App. at B-9 (1995).  Because "the same types of impairments often vary in severity and often restrict different people to different degrees or in different ways," consideration of factors such as the nature, severity, expected duration, and permanent or long-term impact of the impairment is required.  EEOC Interpretive Guidelines, 29 C.F.R. § 1630.2(j) (1995); 29 C.F.R. § 1630.2(j)(2).

¶26  We agree with Reeves that determining whether a person is disabled necessarily requires a factual determination about whether, and to what extent, a person is limited in his or her performance of a major life activity.  The District Court held that because "[n]o statute, administrative rule, or any precedent within Montana has previously established high blood pressure as a physical disability," Reeves is not disabled.  However, a person is not disabled simply because the condition from which he or she suffers is found on a judicially or legislatively created list of disabilities.  Medical advances, the discovery of new medical conditions and the improved understanding of old ones, renders the formation of such a list of disabilities impracticable, if not impossible.  To require all diseases to be labeled as disabling or nondisabling would deny to persons with newly discovered or misunderstood diseases the protections provided by the Act until a court or legislature could reach the issue.

¶27  Further, a physical impairment that substantially limits one person's major life activities may not so limit another person suffering from the same impairment.  For example, high blood pressure (hypertension) can be diagnosed as slightly, moderately, or seriously elevated.  In some cases, high blood pressure can be controlled by medication; however, at its most severe, it can be a life-threatening disease.  To include or exclude high blood pressure in the definition of disability as a matter of law, without consideration of its impact on the individual, either includes in the definition the very large number of people who suffer from only slightly elevated blood pressure or excludes persons who suffer from the disease in its most severe form.

¶28  Thus, we hold that whether a person is disabled under the Act cannot be decided as a matter of law, but rather requires a factual determination to be made on a case-by-case basis.  In this case, there is ample evidence to create an issue of fact regarding whether Reeves is disabled.  The record contains evidence that Reeves is limited in her ability to walk, perform manual tasks, breathe, and work.  Co-workers have testified that Reeves nearly fainted in the kitchen while attempting to grasp an item out of her reach.  Barber testified that Reeves could not do "much work" without becoming flushed and out-of-breath.  Reeves suffers from dizziness, ear-ringing, and severe headaches.

¶29  Further, this Court has held that under the ADA, "a person is substantially limited if he or she experiences difficulties in securing, retaining, or advancing in employment." Martinell v. Montana Power Co. (1994), 268 Mont. 292, 310, 886 P.2d 421, 432.  Because of Reeves' high blood pressure, Dairy Queen "felt that it was for her own well being that we let her go."  Obviously, this is proof that Reeves' condition made it difficult for her to retain her 5+ year employment with Dairy Queen.

¶30  A person is entitled to the protections of the Act not only if he or she suffers from a substantially limiting impairment, but also if he or she suffers from "a condition regarded as such an impairment."  Section 49-2-101(19)(a)(iii), MCA.  Congress added the "regarded as" provision to the ADA to recognize that individuals have historically suffered discrimination "resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society."  42 U.S.C. § 12101(a)(7).  High blood pressure is an example of such a perceived disability:

> [S]uppose that an employee has controlled high blood pressure that is not substantially limiting.  If an employer reassigns the individual to less strenuous work because of unsubstantiated fears that the individual will suffer a heart attack if he or she continues to perform strenuous work, the employer would be regarding the individual as disabled.

EEOC Interpretive Guidelines, 29 C.F.R. § 1630.2(l) (1995).

¶31  In his letter, Barber acknowledged that "it was a combination of having high blood pressure and working in a position as a fast order cook working under conditions of pressure, stress and heat" that caused Dairy Queen to fire Reeves.  This letter alone is enough to create a fact issue as to whether Dairy Queen regarded Reeves as disabled.  Thus, we determine that issues of fact exist regarding whether Reeves is disabled or was regarded as such by Dairy Queen.

¶32  2.  Qualified for Continued Employment

¶33  To prove her prima facie case, Reeves must establish that she was otherwise

qualified for continued employment. The District Court found that "her symptoms of high blood pressure (not the fact of high blood pressure itself) affected [Reeves'] work performance and constituted a clear and present danger to herself and others." We first note that the distinction made by the District Court between the symptoms of high blood pressure and the disease itself is false. Symptoms are merely the outward and subjective signs of an impairment, Webster's Ninth New Collegiate Dictionary 1196 (9th ed. 1986), and it is no more legal to discriminate against one who exhibits the symptoms of a disease than to discriminate against one who suffers from the disease itself.

¶34 The testimony in the record is that in her 5« years at Dairy Queen, Reeves was regarded as an "excellent" employee. She was never reprimanded, and her co-workers testified that she was good at her job. Dairy Queen presented no evidence that Reeves could not perform any aspect of her job as kitchen manager. Thus, we determine that whether Reeves is otherwise qualified is still a disputed issue of fact.

¶35 Under the Act, a disabled employee may be discharged "when the particular employment may subject the person with a disability or that person's fellow employees to physical harm." Section 49-4-101, MCA. Here, the finding that Reeves' continued employment with Dairy Queen increased the risk of harm to her and to others appears to be based primarily on one incident in which Reeves almost fainted and fell from a countertop. Barber never attempted to talk with Reeves or her doctor about the seriousness of her condition specifically or to learn the effects of high blood pressure generally. Rather, Dairy Queen apparently fired Reeves based on a misdirected and uninformed conclusion that it would be "best for Donna." As amicus curiae MHRC noted, "[t]he benign or well-intended violation of another's civil rights can be as successful in denying equal opportunities and full participation for the disabled . . . as an act born of malice or prejudice. Misguided concern may explain why Reeves lost her job, but it does not provide a legal justification for the defendant's actions." We hold that Dairy Queen has not met its burden of showing that no material issues of fact remain regarding whether Reeves was otherwise qualified for continued employment.

¶36 3. Disability Caused Termination

¶37 Under § 49-2-303, MCA, it is an unlawful discriminatory practice for an employer to refuse employment to a person because of physical disability. Proof of this element includes "proof that there is a causal connection between adverse action by the [employer] and the [employee's] membership in a protected class." Rule 24.9.610(2)(b)(v), ARM. The District Court found that Reeves offered no facts to suggest that Dairy Queen's motive was to discriminate against Reeves. As stated in section I, the parties do not dispute that Dairy Queen fired Reeves because of her high blood pressure. However, we hold that the District Court erred in holding, as a matter of law, that this action was not illegal discrimination.

¶38 Therefore, we hold that the District Court erred in granting summary judgment as to Reeves' claim that she was discriminated against in violation of § 49-4-101, MCA.

¶39 B. Did the District Court err in granting summary judgment on Reeves' claim that Dairy Queen failed to provide reasonable accommodation?

¶40 Reeves also claims that the District Court erred in granting summary judgment as

to her claim that Dairy Queen failed to provide reasonable accommodations. Montana law requires employers to reasonably accommodate their employees if the employees are disabled or are regarded as such, unless the accommodation would impose an undue hardship on the employer or endanger the health and safety of any person. Section 49-2-102(19)(b), MCA.

¶41 The District Court found that it was undisputed that Dairy Queen is a fast food restaurant with hot equipment that cannot be moved, changed, or made safe. The court found that Reeves' job required her to work in this environment and stated:

> [Dairy Queen] had no other position or duty for [Reeves] to occupy or assume. It is physically impossible to make the Columbia Falls Dairy Queen kitchen into something that it is not. For anyone experiencing symptoms of high blood pressure, this kitchen is an inherently dangerous place in which to work and cannot be made more safe. . . . Here, accommodation isn't merely an undue hardship upon employer, it is a physical impossibility.

¶42 However, Reeves argues that Dairy Queen never seriously contemplated any accommodation and that Dairy Queen could, in fact, have accommodated her. Reeves argues further that if Dairy Queen believed that accommodation could not be made without undue hardship or danger, it had a duty to investigate. We agree. Montana regulations provide:

> [I]ndependent assessment of the risk of substantial harm is evaluation by the employer of the probability and severity of potential injury in the circumstances, taking into account all relevant information regarding the work and medical history of the person with the disability before taking the adverse employment action in question.

Rule 24.9.606(8), ARM. Dairy Queen never spoke with Reeves or her physician about her condition or what could be done to ensure her safety. In fact, Reeves' doctor testified that when controlled with proper medication, Reeves' condition posed no threat at all. Further, in his deposition, Barber testified to the following:

> Q: So it [Reeves' high blood pressure] wouldn't have been any problem if she would have taken her medication?
>
> A: No, it would not have been a problem.
>
> Q: Did you offer that opportunity? Did you sit down with her and say Donna, I need you to take your medication or else you're going to get terminated?
>
> A: No. . . .

Clearly, this testimony presents an issue of fact as to whether a reasonable accommodation was available.

¶43 Dairy Queen argues that it did not attempt to accommodate Reeves because she did not request any accommodation. While the burden of requesting accommodation is generally on the employee, in this case, Reeves was not given the opportunity to make such a request. She was not informed until she was fired that her disability posed a threat to her continued employment at Dairy Queen, at which point it was too late to request accommodation. We hold that the District Court erred in granting summary judgment on Reeves' claim that Dairy Queen failed to provide reasonable accommodations.

Conclusion

¶44 Donna Reeves' five-year employment with Dairy Queen was brought to an abrupt halt when Dairy Queen determined, because Reeves suffered from high blood pressure, that it would be best for everyone if she was let go. We hold that whether Reeves is entitled to the protections of the Montana Human Rights Act, whether her continued employment posed a direct threat to her health and safety and to that of others, and whether Dairy Queen could have done anything to accommodate her are issues of fact that Reeves is entitled to have resolved at trial.

¶45 Based on the foregoing, we reverse the decision of the District Court and remand for further proceedings consistent with this Opinion.

/S/  W. WILLIAM LEAPHART

We concur:

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  KARLA M. GRAY
/S/  TERRY N. TRIEWEILER