No. 00-349

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 177

ROBERT W. BUTTERFIELD,

     Plaintiff and Appellant,

     v.

SIDNEY PUBLIC SCHOOLS AND THE
HUMAN RIGHTS COMMISSION OF THE
STATE OF MONTANA,

     Defendants and Respondents.

FILED

AUG 3 0 2001

*...l Smith*
SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Seventh Judicial District,
                   In and for the County of Richland,
                   The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Marvin J. Howe, Schneider, Howe & Batterman, P.C., Glendive, MT

     For Respondents:

          William J. Speare, Moulton, Bellingham, Longo & Mather, P.C., Billings, MT
          (For Sidney Public Schools)

Submitted on Briefs: May 17, 2001

Decided: August 30, 2001

Filed:

_Al Rule_

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The Appellant, Robert W. Butterfield, filed a petition with the Montana Department of Labor and Industry in which he alleged that the Sidney Public Schools discriminated against him because of a physical disability. The Department's hearing examiner concluded that the School District had unlawfully discriminated against Butterfield. The District appealed to the Montana Human Rights Commission, which reversed the final decision of the Department. Butterfield then sought judicial review of the Commission's decision in the District Court for the Seventh Judicial District in Richland County, which affirmed the decision of the Commission. Butterfield now appeals from the order of the District Court. We reverse the District Court.

¶2 The sole issue presented on appeal is whether the District Court erred when it affirmed the Commission's conclusion that Butterfield is not disabled or regarded by his employer as disabled.

## FACTUAL BACKGROUND

¶3 The Sidney Public Schools hired Robert W. Butterfield as a school custodian on August 28, 1995. Butterfield's job description included a requirement that he be able to lift heavy objects and equipment. The District did not require Butterfield to take a physical examination before or after being hired.

¶4 Butterfield hurt his back in an auto accident in April 1996. He returned to work in June 1996, with his doctor's approval. Although he continued to have back problems, Butterfield was able to adequately perform his job by doing less heavy lifting.

2

¶5  On July 8, 1996, Butterfield submitted a claim for worker's compensation as a result of a back injury sustained on July 1, 1996, while cleaning under some bleachers at work. Butterfield's doctor, Dr. Donald A. Cooper, recommended that Butterfield remain on leave from work until his condition improved. Butterfield discussed this recommendation with Superintendent Douglas Sullivan, who informed Butterfield that he could return to work when his doctor released him.

¶6  Butterfield attended physical therapy, prescribed by Dr. Cooper, but did not complete the prescribed number of sessions. In August 1996 his therapist determined that Butterfield could return to work with good pain management. However, Butterfield remained off work.

¶7  The District's insurer referred Butterfield to another doctor, Dr. William Shaw, for an evaluation in November 1996. Dr. Shaw determined that any back problems stemming from the July 1, 1996, injury at the school had stabilized and reached maximum healing. Dr. Shaw did not think that Butterfield required any restrictions beyond those under which he had successfully performed his job prior to the July 1, 1996, accident.

¶8  While continuing his treatment with Dr. Cooper, Butterfield received additional treatment from an orthopedic surgeon, Dr. Lotfi Ben-Youssef. Dr. Ben-Youssef concluded in May 1996 that Butterfield would probably not be able to return to his job. Dr. Cooper eventually released Butterfield to return to work in June of 1997.

¶9  By letter dated February 28, 1997, Superintendent Sullivan told Butterfield that he was putting him on leave pursuant to the Family Medical Leave Act for up to the maximum 12 weeks. The letter asked Butterfield to obtain releases from his treating physician before

3

returning to work. Butterfield's FMLA leave expired on May 20, 1997. However, Butterfield did not immediately return to work. On June 23, 1997, Sullivan sent Butterfield a letter requesting written notification from the treating physician that Butterfield could return to work or, alternatively, Butterfield's written resignation. The letter informed Butterfield that he had until July 8, 1997, to respond or the District would fill his position.

¶10 Butterfield asked Dr. Cooper for a release allowing him to return to work. On June 24, 1997, Dr. Cooper released Butterfield to return to work but restricted his heavy lifting, limited his back movement, and limited use of his left shoulder. Butterfield obtained a release from Dr. Ben-Youssef on July 1, 1997. Dr. Ben-Youssef also restricted heavy lifting and use of the left shoulder.

¶11 Sullivan reviewed the releases and consulted with counsel before concluding that Butterfield could not perform the essential functions of his job with the physicians' restrictions. Sullivan believed that he could not hire custodians unable to do heavy lifting and did not consider allowing Butterfield to return to work with a heavy lifting restriction.

¶12 Sullivan met with Butterfield and told him that he could not do the job with the lifting restrictions. Sullivan gave Butterfield a letter which explained the District's position. The letter said that the District believed that Butterfield could not do his job with the restrictions and that the District was not aware of any accommodation that would permit Butterfield to do the job with restrictions. Finally, the letter stated that the District wanted Butterfield to resign effective July 18, 1997.

¶13 Because Butterfield believed he could still do the job, he did not resign. Instead, he

4

returned to Dr. Ben-Yousseff's office and obtained a release written by a nurse allowing him to lift 50 pounds or less. Sullivan refused to consider a release signed by a nurse. Furthermore, because the nurse's release came after the July 18, 1997, deadline, the District considered Butterfield as having resigned. However, Sullivan gave Butterfield until August 1, 1997, to obtain a sufficient release.

¶14 Butterfield went back to Dr. Ben-Yousseff and got a letter releasing him to perform the custodian's job with no restrictions. Butterfield went back to Dr. Cooper and got a modified release which contained the same restrictions as the prior release, except that the release specified that Butterfield could not lift anything over 50 pounds. Butterfield obtained both releases before August 1.

¶15 Despite the new releases, Sullivan told Butterfield that the District believed that he could not perform the essential functions of his job. Sullivan then wrote another letter informing Butterfield that the new releases were insufficient. Sullivan told Butterfield that he intended to recommend that the Board of Trustees accept Butterfield's resignation.

¶16 On September 3, 1997, Butterfield filed a petition with the Montana Department of Labor and Industry in which he alleged that the Sidney Public Schools discriminated against him by refusing to allow him to return to his job as a custodian because of his physical disability. After a contested case hearing, the Department concluded that the District had unlawfully discriminated in employment by refusing to accommodate Butterfield and by refusing to return him to his job.

¶17 The District appealed to the Montana Human Rights Commission, which reversed the

5

Department's final agency decision. Butterfield filed a petition for judicial review in the District Court for the Seventh Judicial District in Richland County. On March 27, 2000, the District Court affirmed the order of the Commission. Butterfield now appeals from the order of the District Court.

## DISCUSSION

¶18 Butterfield contends on appeal that the hearing examiner found that he was disabled and that those findings were supported by substantial evidence. Consequently, Butterfield argues that the Commission and the District Court erred by disregarding the hearing examiner's findings to conclude that he was not physically disabled.

¶19 The District asserts that the Commission did not reverse the hearing examiner's findings of fact. It contends that the Commission simply reversed the examiner's conclusion that Butterfield was disabled or regarded as disabled. The District contends that that conclusion was incorrect because Butterfield failed to prove that he was significantly restricted in performing a "broad range of jobs" and showed only that he could not perform the custodian's job because it required lifting more than 50 pounds. Having reviewed the record and the hearing examiner's findings, we now conclude that the District mischaracterizes Butterfield's burden and that he satisfied his burden when he proved and the hearing examiner found that he is significantly restricted in the ability to perform that class of jobs which requires heavy physical labor, or at least that his employer regarded him as so restricted.

¶20 Section 49-2-303, MCA, provides that it is an unlawful discriminatory practice to

6

refuse employment to a person because of physical disability when the demands of the position do not require a distinction based on physical disability. Section 49-2-101(19)(a), MCA, defines physical or mental disability as an impairment that substantially limits one or more of a person's major life activities or is regarded by the employer as such an impairment.

¶21    "Major life activities" are not defined in Montana's Human Rights Act. However, we have previously relied on federal regulations adopted by the Equal Employment Opportunity Commission (EEOC) pursuant to the Federal Rehabilitation Act for purposes of defining "major life activities." *See Hafner v. Conoco, Inc.* (1994), 268 Mont. 396, 402, 886 P.2d 947, 951. 29 C.F.R. § 1630.2 (2000) of those regulations provides in relevant part as follows:

(h) *physical or mental impairment* means:

(1) any physiological disorder, or condition, . . . affecting one or more of the following body systems: . . . musculoskeletal . . .

(i) *Major life activities* means functions such as . . . performing manual tasks, . . . and working.

\*     \*     \*

(3) with respect to the major life activity of *working* –

(i) the term *substantially limits* means significantly restricted in the ability to perform <u>either a class of jobs or</u> a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.

\*     \*     \*

(l) *is regarded as having such an impairment* means:

(2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment;

¶22 In other words, based on the federal regulations adopted pursuant to the Federal Rehabilitation Act after which Montana's Human Rights Act was patterned, Butterfield had to prove that he is disqualified from "a class of jobs."

¶23 In applying the provisions of our Human Rights Act, we have also in the past relied on the EEOC Interpretive Guidelines and, in particular, the Interpretive Guideline to 29 C.F.R. § 1630.2(j) which defines "substantially limits" as applied to the major life activity of working. *See Reeves v. Dairy Queen, Inc.,* 1998 MT 13, ¶ 25, 287 Mont. 196, ¶ 25, 953 P.2d 703, ¶ 25. That same Interpretive Guideline to the extent that it is relevant to the issue in this case, provides:

> On the other hand, an individual does not have to be totally unable to work in order to be considered substantially limited in the major life activity of working. An individual is substantially limited in working if the individual is significantly restricted in the ability to perform <u>a class of jobs or</u> a broad range of jobs in various classes, when compared with the ability of the average person with comparable qualifications to perform those same jobs. <u>For example</u> an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs. This would be so even if the individual were able to perform jobs in another class, e.g., the class of semi-skilled jobs. . . .

EEOC Interpretive Guidelines, 29 C.F.R. § 1630.2(j), App. at 353-54 (2000) (emphasis added).

¶24 The example given in the cited EEOC Interpretive Guideline is the exact situation

proven and found by the hearing examiner to exist in this case. Butterfield has a back condition that either prevents him from performing heavy labor or which his employer regards as precluding heavy labor. He is therefore substantially limited in the major life activity of working because his impairment eliminates his ability to perform a class of jobs. This is so even though it is suggested, but not proven, that he can perform other jobs. Therefore, the burden suggested by the District, that Butterfield be required to prove that he was incapable of performing a "broad class of jobs," is an incomplete statement of the law.

¶25 Within this legal framework, the hearing examiner found that Butterfield was physically disabled. Nowhere does the School District or the District Court contend that the findings of the hearing examiner were not supported by substantial evidence.

¶26 The hearing examiner found that prior to his termination, Butterfield had been referred by his workers compensation insurer to a doctor who disclosed to his employer that he had had chronic back problems for nearly 20 years up to and including the date of his work-related injury. (Finding No. 5). The hearing examiner also found that although Butterfield believed he could return to work following his work-related injury, his attending physicians restricted his activities in June and July of 1997 respectively by recommending that he avoid heavy lifting, limit his back movement, limit use of his left shoulder, and restrict himself to light duty back movement. (Findings No. 8 and 9). Butterfield's employer reviewed these recommended restrictions and concluded that someone who could not do heavy lifting could not perform Butterfield's custodian position and refused to allow Butterfield to return to work with a heavy lifting restriction. (Finding No. 10). Because of his physical impairment,

9

Butterfield was not allowed to return to work. (Finding No. 11). Butterfield does not have a high school diploma and has limited transferrable skills. (Finding No. 16).

¶27 Although not designated as a "finding," the hearing examiner went on to state on page 6 of his decision in terms which surely amount to findings that:

> The district removed Butterfield from work because of limitations his doctors imposed. On the facts of this case, Butterfield suffered from a condition regarded as a substantially limiting impairment by the district. Indeed, for a worker with a limited education and a spotty work history, the restrictions Butterfield brought to his employer in July 1996 could and did result in a substantial limitation of his employment. Butterfield was disabled.
>
> The district disputed Butterfield's disability, but did not dispute that his limitations were the reason it removed him from employment. There was no real dispute about the reason why the district ended Butterfield's employment.
> . . .

¶28 The hearing examiner could not have found disability in terms that more clearly reflect this state's statutory definition of the term as further described by federal regulation, federal interpretive guidelines, and our own decisions than was done in the hearing examiner's findings and opinion.

¶29 Furthermore, the facts of this case are practically indistinguishable from the relevant facts in *Hafner v. Conoco, Inc.* (1994), 268 Mont. 396, 886 P.2d 947. In *Hafner* the plaintiff was offered a probationary position as a "helper" at Conoco's refinery in Billings. However, full time employment was conditioned on the successful completion of a pre-employment physical. Hafner was examined by the same doctor, William Shaw, who reported Butterfield's chronic back condition in this case. He noted that based on a prior knee injury, he would "expect problems [with Hafner's knee] with climbing and squatting." He concluded

10

that Hafner had degenerative joint disease in his knee joint which would accelerate with repetitive climbing, squatting, and carrying. Shaw's opinion was reinforced by the opinion of a second physician. The personnel director at Conoco then decided that Hafner could not perform the "helper" position in a safe manner and could not be considered for further employment. Hafner filed a claim that he had been discriminated against based on a disability. However, the district court granted summary judgment to Conoco based on its conclusion that Hafner had failed to prove he was physically handicapped or was "regarded as" physically handicapped as the term was then defined at § 49-2-101(15)(a), MCA [now § 49-2-101(19)(a), MCA].

¶30 On appeal this Court was asked to decide whether there was sufficient evidence to establish that Hafner was "regarded as" physically handicapped by Conoco. We noted that it is not sufficient to prove that an employer simply regards an employee incapable of satisfying the demands of a particular job. However, citing *Forrisi v. Bowen* (4th Cir. 1986), 794 F.2d 931, 935, we quoted with approval that:

> The statutory reference to a substantial limitation indicates instead that an employer regards an employee as handicapped in his or her ability to work by finding the employee's impairment to foreclose generally the type of employment involved.

*Hafner*, 268 Mont. at 402, 886 P.2d at 951.

¶31 We noted that the Conoco personnel director testified that in his opinion Hafner was restricted in basic job functions that would limit his performance of work or could limit his performance of work and on that basis held:

11

Under the federal standard, which we adopt, and based on the testimony of the Conoco personnel director, we conclude that Hafner has established that Conoco "regarded" him as physically disabled. We hold, therefore, that the District Court erred in determining that Hafner failed to establish the first element of a prima facie case of employment discrimination. . . .

*Hafner*, 268 Mont. at 403, 886 P.2d at 951.

¶32 We concluded in *Hafner* that the plaintiff's employer regarded him as physically disabled because it expressed the opinion that he was "restricted. . . .in basic job functions. . . ." It is clear from the hearing examiner's findings in this case that Butterfield was not allowed to return to work for the exact same reason. His employer considered him restricted in his ability to do heavy lifting. As such, Butterfield was regarded as restricted in the ability to perform that class of jobs which required heavy lifting and therefore was or was at least "regarded as" physically disabled.

¶33 Accordingly, we reverse the judgment of the District Court and reinstate the final agency decision of the Montana Department of Labor and Industry.

_____
                        /Justice

We Concur:


_____
        Chief Justice


12

_Patricia Cotter_

_Jim Rice_

_____
Justices

Chief Justice Karla M. Gray, dissenting.

¶34    I respectfully dissent from the Court's opinion. I agree with the Court that the issue before us is whether the District Court erred when it affirmed the Commission's conclusion that Butterfield is not disabled or regarded by his employer as disabled. I also agree that the law cited by the Court is correct. I submit, however, that the Court attributes to the hearing examiner findings never made and ignores findings actually made. A proper analysis of the law and the record in this case requires this Court to affirm the District Court. I would do so.

¶35    With regard to the hearing examiner's findings, they do not include--as the Court would have the reader believe--a finding that Butterfield is disabled. The hearing examiner did make extensive findings of fact. He followed those findings with an Opinion containing his legal analysis, concluding therein that Butterfield was disabled and that he was regarded as disabled by the School District. These are the conclusions the Commission determined were incorrect as a matter of law. They also are the conclusions the District Court determined were incorrect as a matter of law in affirming the Commission's decision on judicial review. In my opinion, as discussed below, the Commission and the District Court were correct.

¶36    The Court also states that the hearing examiner "found that [Butterfield] is significantly restricted in the ability to perform that class of jobs which requires heavy physical labor, or at least that his employer regarded him as so restricted." While such a

14

finding, if supported by substantial evidence, would mandate a conclusion that Butterfield is disabled, the fact is that no such finding is contained in the hearing examiner's extensive findings of fact.

¶37 With regard to other findings, the Court is correct that Butterfield received releases to return to work in June and July, with restrictions from Dr. Cooper of no heavy lifting, limited back movement and limited use of his left shoulder, and with restrictions from Dr. Ben-Youssef from heavy lifting and lifting with his left shoulder and to light duty back movement. Important findings omitted by the Court are that Dr. Cooper modified his release of Butterfield to return to work in August of 1997, defining no heavy lifting as "over approximately 50 pounds" and that, while Butterfield continued to maintain he could perform his job within the restrictions, the School District believed "he could not perform the essential functions *of his job*." (Emphasis added.) Thereafter, and on the basis that Butterfield could not perform his job, the School District effectively terminated his employment.

¶38 Turning, then, to an analysis of the case before us, we all agree that, to succeed with his claim of employment discrimination, Butterfield must establish he has a physical disability, that is, a physical impairment that substantially limits one or more of his major life activities or a condition regard by the School District as such an impairment. *See* § 49-2-101(19)(a), MCA. We also agree that he can meet this standard only by proving that his impairment precludes him from either a class of jobs or a broad range of jobs in various

15

classes. *See Thompson v. Holy Family Hosp.* (9th Cir. 1997), 121 F.3d 537, 540. The Commission concluded Butterfield did not meet his burden and the District Court affirmed. The judicial standard of review of an agency's conclusion of law on a mixed question of law and fact is whether the determination is correct. *Maguire v. State* (1992), 254 Mont. 178, 182, 835 P.2d 755, 757-58.

¶39 On a careful review of the record before us, it is irrefutable that Butterfield has not established the elements of his cause of action against the School District. It is not disputed that Butterfield has a "bad back." It also is not disputed that the School District effectively terminated Butterfield's employment because it believed his back condition left him unable to perform his job. As set forth above, however, this is not enough to establish employment discrimination based on physical disability.

¶40 An employer does not necessarily regard an employee as disabled simply by finding the employee incapable of satisfying the demands of a particular job. *Hafner*, 268 Mont. at 402, 886 P.2d at 951 (citation omitted). Pursuant to the "substantially limits" a major life activity element contained in § 49-2-101(19)(a), MCA, and in the EEOC Interpretative Guidelines on which the Court relies, Butterfield must establish that he is precluded from a class of jobs or a broad range of jobs. The record is clear in this case that he has not done so. Indeed, the hearing examiner's findings contain nothing which could be stretched to even relate to this requirement. Moreover, it is not surprising that Butterfield did not make this showing; his position from the outset of his back-related problems at work through the time

the School District terminated his employment and afterwards was that he could perform his job. Illustrative of his position is Butterfield's testimony at the agency hearing on his claim that, after leaving the School District, he sought a variety of jobs which were as physically demanding as his former job with the School District and felt he could do the work.

¶41 The Court cites to no finding actually made by the hearing examiner in this regard. The purported "finding" on which the Court relies--that Butterfield "is significantly restricted in the ability to perform that class of jobs which requires heavy physical labor, or at least that his employer regarded him as so restricted"--does not appear in the findings of the hearing examiner. In addition, while the EEOC Interpretative Guidelines quoted by the Court include as an example that an individual with a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the physical condition eliminates the ability to perform a class of jobs, the critical language is "a back condition *that prevents the individual from performing any heavy labor job*." (Emphasis aded.) The guideline does not state, imply or even suggest that every "back condition" prevents an individual from performing any heavy labor job. That is the very proof a plaintiff like Butterfield must bring forward and it is the very proof which in this case simply was not presented.

¶42 Finally, the present case is not "practically indistinguishable" from *Hafner*. There, as the Court points out, the personnel director testified that the plaintiff could not perform the position at issue and "could not be considered for further employment." No such evidence

17

in support of the "substantially limits" element was outlined in any finding by the hearing examiner in the present case. Indeed, as noted above, the School District terminated Butterfield because he could not perform *his job*. Such a determination does not equate to the School District regarding Butterfield as disabled. *See Hafner*, 268 Mont. at 402, 886 P.2d at 951 (citation omitted). The inability to perform one particular job, which is all Butterfield has established here, does not constitute a substantial limitation in the ability to perform a class of jobs. *See Thompson*, 121 F.3d at 540.

¶43 The District Court concluded Butterfield did not establish a case of employment discrimination based on physical disability. The District Court was correct, and I would affirm. I dissent from the Court's failure to do so.

_____
Chief Justice

Justice James C. Nelson joins in the foregoing dissenting Opinion.

_____
Justice

Justice Jim Rice joins in the foregoing dissenting Opinion.

_____
Justice

18