No. 01-572

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 27

PAUL ADAMSON,

        Plaintiff and Appellant,

   v.

PONDERA COUNTY and THE HUMAN RIGHTS
COMMISSION OF THE STATE OF MONTANA,

        Defendants and Respondents.

APPEAL FROM:    District Court of the First Judicial District,
In and for the Lewis and Clark, Cause No. BDV-99-00202
The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Jeff R. Lynch, Attorney at Law, Billings, Montana

      For Respondents:

          Roger T. Witt, Ugrin Alexander Zadick & Higgins, Great Falls, Montana (for
Pondera County); Kevin Braun, Montana Department of Labor, Helena,
Montana (for Montana Human Rights Commission)

Submitted on Briefs: July 2, 2002

Decided: February 10, 2004

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Paul Adamson (Adamson) appeals the judgment entered by the First Judicial District Court, Lewis and Clark County, denying Adamson's petition for judicial review of the decision entered by the Montana Human Rights Commission (the MHRC).

¶2 We address the following issue on appeal and affirm: Did the District Court err in affirming the MHRC's decision that Adamson was not disabled within the meaning of that term in the Montana Human Rights Act?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The following facts were adopted by the Hearing Examiner as undisputed and, subsequently, have not been contested. Adamson concedes that he does not challenge the facts underlying the present appeal.

¶4 Adamson was employed by the Pondera County Road Department from November 21, 1977, to May 25, 1996. During that time, Adamson held the position of County Equipment Operator/Laborer and performed the duties of his position without incident.

¶5 In December 1993, Adamson injured his left shoulder when he slipped while stepping from his camper. This accident did not occur while Adamson was working nor while he was on duty. Adamson sought medical treatment for this injury in February 1994.

¶6 Around April or May 1994, Adamson injured his right shoulder while performing prescribed physical therapy exercises for his left shoulder. Again, this injury did not occur while Adamson was working nor while he was on duty. Adamson again sought medical treatment for this injury, and received medical treatment from Michael E. Luckett, M.D. (Dr.

2

Luckett).

¶7     Dr. Luckett noted that Adamson was suffering from bilateral rotator cuff tears.  On June 2, 1994, Adamson underwent surgery on his right shoulder to repair the torn rotator cuff, and the surgery was successfully completed.

¶8     On August 12, 1994, Dr. Luckett told Adamson that he could return to work; however, he placed a 20-pound lifting restriction on Adamson.  On August 16, 1994, Adamson requested of the Pondera County Commissioners' Office that he be returned to his position.  After meeting with the Road Supervisor, the commissioners denied Adamson's request to be returned to work, as they believed Adamson would have difficulty using certain equipment and could endanger himself or others.  Their denial was evidenced and further explained by a letter from the Pondera County Commissioners' Office, dated August 17, 1994.

¶9     After receiving the letter, Adamson requested from Dr. Luckett a more specific medical release, which Dr. Luckett twice provided.  In these releases, Dr. Luckett indicated that Adamson's lifting restriction was for no more than 20 pounds on his right upper extremity and would continue for a period of approximately six months. The commissioners still refused to return Adamson to his position or to modify his position in any manner.

¶10    Adamson subsequently returned to work without any restrictions on Friday, January 13, 1995.  Adamson provided the commissioners with his full work release on January 18, 1995.

¶11    On April 13, 1995, Adamson underwent surgery on his left shoulder to repair the torn

3

rotator cuff, and the surgery was successfully completed.

¶12 On May 12, 1995, Dr. Luckett released Adamson to modified duty, restricting Adamson to lifting not more than 25 pounds and not more than 15 pounds above his shoulder. Adamson notified the Pondera County Commissioners of these restrictions and requested that he be returned to his position. The commissioners refused to do so.

¶13 On October 13, 1995, Dr. Luckett provided Adamson a full work release, and the commissioners returned Adamson to work on October 26, 1995. Adamson remained working with Pondera County until May 25, 1996, when he retired.

¶14 As a result of his absences from work, during which time the commissioners refused to return Adamson to his position, in total, Adamson incurred a financial loss of $21,305.03.

¶15 On March 12, 1998, Adamson presented evidence of his financial loss to the Hearing's Examiner for the MHRC, claiming he incurred such loss as a result of Pondera County's discrimination. The Hearing Examiner found in favor of Pondera County, a ruling that the MHRC affirmed.

¶16 The First Judicial District Court, Lewis and Clark County, upheld the MHRC's ruling on June 5, 2001, holding that Adamson was not disabled as that term was defined in the Montana Human Rights Act.

¶17 Adamson now appeals the District Court's judgment.

4

**STANDARD OF REVIEW**

¶18     We review an administrative agency's findings of fact to determine whether those findings are clearly erroneous in light of the reliable, probative, and substantial evidence in the record. *State Personnel v. Investigators*, 2002 MT 46, ¶ 18, 308 Mont. 365, ¶ 18, 43 P.3d 305, ¶ 18. We review an administrative agency's conclusions of law for correctness. *State Personnel*, ¶ 20. Because Adamson represents that his present appeal is limited to the legal conclusions reached by the District Court, our review is limited to whether the District Court's legal interpretations were correct.

**DISCUSSION**

¶19     **Did the District Court err in affirming the MHRC's decision that Adamson was not disabled within the meaning of that term in the Montana Human Rights Act?**

¶20     Adamson initially argues that because the present case is one of direct evidence, he needs only to prove two elements: (1) that he was disabled; and (2) that he was qualified for continued employment and that his employment did not subject him or others to physical harm. Consequently, Adamson contends that he was disabled as this Court interpreted that term in *Martinell v. Montana Power Co.* (1994), 268 Mont. 292, 886 P.2d 421. Namely, he argues that his situation likens that of Martinell's, wherein this Court held that Martinell was handicapped although her condition was not chronic. In addition, Adamson contends that Pondera County did not attempt to accommodate his restricted lifting conditions, although he was capable of performing the majority of his duties should the county have returned him to his position.

5

¶21 Pondera County and the MHRC implicitly concede that the present case is one of direct evidence, as they also apply and argue under the direct evidence test. They both argue that because Adamson's condition was temporary, he was not disabled, and because Adamson was not disabled, the county did not need to accommodate his condition. They also argue that this Court's decision in *Butterfield v. Sidney Public Schools*, 2001 MT 177, 306 Mont. 179, 32 P.3d 1243, is inapplicable on these facts, as Adamson's restrictions were temporary and his job was never in jeopardy.

¶22 Under the Montana Human Rights Act, it is an unlawful discriminatory practice for:

> [a]n employer to refuse employment to a person, to bar a person from employment, or to discriminate against a person in the compensation or in a term, condition, or privilege of employment because of . . . physical or mental disability . . . when the reasonable demands of the position do not require [a] . . . physical or mental disability . . . distinction.

Section 49-2-303(1)(a), MCA. A physical or mental disability is defined as:

> (i)   a physical or mental impairment that substantially limits one or more of a person's major life activities;
> (ii)  a record of such impairment; or
> (iii) a condition regarded as such an impairment.

Section 49-2-101(19)(a), MCA.

> In addition,

> [i]t is unlawful to discriminate, in hiring or employment, against a person because of the person's physical disability. There is no discrimination when the nature or extent of the disability reasonably precludes the performance of the particular employment or when the particular employment may subject the person with a disability or that person's fellow employees to physical harm.

Section 49-4-101, MCA.

6

¶23    In *Reeves v. Dairy Queen, Inc.*, 1998 MT 13, 287 Mont. 196, 953 P.2d 703, we relied in part on the Equal Employment Opportunity Commission Interpretive Guidelines in holding that a determination under the Montana Human Rights Act regarding whether a person is disabled must be made on a case-by-case basis. *Reeves*, ¶¶ 23-28.  These interpretive guidelines, in pertinent part, state that "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities.  Such impairments may include, but are not limited to, broken hips, sprained joints, concussions, appendicitis, and influenza."  29 C.F.R. § 1630.2(j).  As an example, these interpretive guidelines also state that "a broken leg that takes eight weeks to heal is an impairment of fairly brief duration.  However, if the broken leg heals improperly, the 'impact' of the impairment would be the resulting permanent limp."  29 C.F.R. § 1630.2(j).

¶24    Several United States Supreme Court cases have also relied on the interpretive guidelines, noting that impairments which can be mitigated by corrective measures, such as medications, are not disabling impairments.  *See e.g. Sutton et al. v. United Air Lines, Inc.* (1999), 527 U.S. 471, 119 S.Ct. 2139, 144 L.E.2d 450; *Murphy v. United Parcel Service, Inc.* (1999), 527 U.S. 516, 119 S.Ct. 2133, 144 L.E.2d 484; *Albertson's, Inc. v. Kirkingburg* (1999), 527 U.S. 555, 119 S.Ct. 2162, 144 L.E.2d 518.

¶25    We have also held that we must determine whether a person suffers from a "physical handicap" on a case-by-case basis.  *Martinell*, 268 Mont. at 307, 886 P.2d at 430.  The woman in *Martinell* suffered from chronic endometriosis, the medication for which caused

7

her to become depressed and ultimately miss a substantial amount of work. Her condition persisted for three years. *Martinell*, 268 Mont. at 298-300, 886 P.2d at 425-26. In holding that Martinell's condition was a handicap, we noted Martinell's difficulty in retaining and advancing her employment. *Martinell*, 268 Mont. at 307, 886 P.2d at 430.

¶26 In *Butterfield* we held that: (1) since Butterfield was restricted in his basic job functions, due to his back injury; and (2) since the School District did not allow Butterfield to return to his position because of these restricted job functions, although he was released from his doctor to the extent of not lifting more than 50 pounds, the School District regarded him as disabled, and the District Court erred in holding to the contrary. *Butterfield,* ¶ 32.

¶27 Here, unlike the woman's condition in *Martinell*, which lasted three years, and the man's condition in *Butterfield*, which was permanent, Adamson's condition was temporary. Indeed, Dr. Luckett fully released Adamson after six months following Adamson's first surgery, and six months following Adamson's second surgery.

¶28 In addition, Adamson's job was never in jeopardy during his absence. During the interim of both shoulder surgeries, Pondera County kept open and available Adamson's position for his return, unlike the School District did in *Butterfield*. Adamson's surgeries, and his absence from work also did not prevent him from retaining or advancing his employment with Pondera County, as did the woman's condition in *Martinell*.

¶29 Further, the Hearing Examiner in charge of Adamson's claim never concluded that Adamson's condition precluded him from performing a class of jobs, as was the case in *Butterfield*. The Hearing Examiner merely determined that Adamson's return could endanger either Adamson or Adamson's coworkers, and such a determination is in accordance with Montana law, namely § 49-4-101, MCA.

¶30 Finally, as the interpretive guidelines state, Adamson's condition was both temporary and non-chronic, as evidenced by his return to work--with Dr. Luckett's full release--six months after both surgeries.

¶31 Accordingly, we hold that both the MHRC and the District Court did not err in concluding that Adamson was not disabled under the Montana Human Rights Act, as there was no error in the Hearing Examiner's legal conclusions.

¶32 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER