**FILED**

October 21 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

OP 08-0430

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 349

STATE FARM FIRE AND CASUALTY COMPANY,

> Plaintiff,

> v.

BUSH HOG, LLC,

> Defendant.

APPEAL FROM:  Certified Question, United States District Court
        District of Montana, Billings Division
        Honorable Richard F. Cebull, Presiding Judge

COUNSEL OF RECORD:

> For Plaintiff:

> > Michael J. Lilly (argued), Gig A. Tollefsen, Berg, Lilly & Tollefsen, P.C.,
> > Bozeman, Montana

> For Defendant:

> > Allan H. Baris (argued), Moore, O'Connell & Refling, P.C., Bozeman,
> > Montana

> For Amicus Montana Defense Trial Lawyers Association:

> > John Alke, Hughes, Kellner, Sullivan & Alke, PLLP, Helena, Montana

> For Amicus Montana Trial Lawyers Association:

> > Lawrence A. Anderson, Attorney at Law, Great Falls, Montana

Submitted on Briefs: June 24, 2009

Decided: October 21, 2009

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 The United States District Court for the District of Montana, Billings Division, has certified the following three questions to this Court pursuant to M. R. App. P. 15(3):

1. Is a defendant who wishes to assert a claim for contribution against a person whose negligence may have been the proximate cause of the injury for which a plaintiff seeks damages required by § 27-1-703, MCA, to assert that claim in the lawsuit filed by plaintiff, or may the defendant seek contribution in a subsequent action?

2. Does Montana's strict products liability law recognize a right of "upstream" indemnity against a product "seller" (as defined in § 27-1-719, MCA) in favor of the owner of a product who has not himself suffered any bodily injury or property damage, but who has settled a negligence lawsuit brought by a plaintiff injured while using the product?

3. If a subsequent contribution or indemnification action is permitted, is an "uninsured employer" as that term is defined by § 39-71-501, MCA, prohibited from bringing such a contribution and/or indemnification action?

¶2 We accepted the certified questions by order filed on September 24, 2008, reserving the right to reformulate these questions pursuant to M. R. App. P. 15(4). We now reformulate Question 3 as follows: Is an uninsured employer prohibited from bringing either a contribution claim or an indemnity claim against a third party after settling with the injured employee? For the reasons set forth below, we answer Question 3, as reformulated by this Court: Yes, an uninsured employer is prohibited from bringing either a contribution claim or an indemnity claim against a third party after settling with the injured employee. Because we conclude that our reformulated Question 3 is dispositive, we do not address the first two certified questions.

**Certified Facts**

3

¶3     In accordance with M. R. App. P. 15(6)b., the United States District Court certified the following facts in this case:

> Bush Hog manufactured a posthole digger in 1989. That posthole digger consisted of an auger blade, gear box, and boom. It was designed to be attached to and be powered by a tractor.
>
> The posthole digger was delivered by Bush Hog to one of its dealers. The Bush Hog dealer sold it to a customer. Rupert Colmore ultimately purchased the posthole digger in Tennessee in a used condition. The person from whom he purchased it is unknown.
>
> Rupert Colmore brought the posthole digger to a ranch in Montana he leased from Colmore Properties. Rupert Colmore asked Douglas Forgey to help him on the ranch by doing fencing work. Rupert Colmore gave Douglas Forgey the Bush Hog posthole digger and a tractor to assist him in doing the fencing work.
>
> While using the posthole digger and tractor to do the fencing work on the 14th day of September, 2000, Douglas Forgey became entangled in the auger blade. He died as a result of the entanglement.
>
> Douglas Forgey's widow filed a claim for Workers' Compensation benefits. Rupert Colmore was not enrolled in a Workers' Compensation plan at the time of Douglas Forgey's death. As a result, the Montana Uninsured Employers Fund paid Douglas Forgey's widow's claim. It sought reimbursement of the sums paid from Rupert Colmore claiming he was Douglas Forgey's employer.
>
> Rupert Colmore denied liability for the sums paid by the Uninsured Employers Fund. He claimed Douglas Forgey was a "casual employee" for whom he did not need to provide Workers' Compensation insurance. The Montana Workers' Compensation Court disagreed. Rupert Colmore appealed. Ultimately, the Montana Supreme Court issued its opinion affirming the Workers' Compensation Court's determination that Rupert Colmore was an uninsured employer who was required to have Workers' Compensation insurance for Douglas Forgey. *Colmore v. Uninsured Employers' Fund*, 2005 MT 239, 328 Mont. 441, 121 P.3d 1007. State Farm reimbursed the Uninsured Employer's Fund for the benefits it paid to Mrs. Forgey.
>
> On the 20th day of August, 2003, Douglas Forgey's widow filed an action against Rupert Colmore and others in the United States District Court for the District of Montana, seeking survivorship and wrongful death damages. That case was filed as Cause No. CV-03-131-BLG-RWA (the "Forgey case"). In that action, Douglas Forgey's widow alleged that Rupert Colmore and others were negligent and negligent per se for providing Douglas Forgey with unsafe equipment.

4

On November 12, 2004, Rupert Colmore notified Bush Hog of the action and requested a defense and indemnity. Bush Hog denied the request. On October 28, 2004, the Court in the Forgey case granted Colmore and the other defendants leave to amend their answer and file a third-party complaint against Bush Hog to seek indemnity or contribution. They chose not to file a third-party complaint against Bush Hog at that time. They decided to wait until the Forgey case was concluded to pursue their claims against Bush Hog in this case.

Prior to trial of the Forgey case, Rupert Colmore admitted negligence. The damages trial in the Forgey case began June 12, 2006. During the second day of trial, Rupert Colmore reached a settlement with the Estate of Douglas Forgey before a verdict was rendered. He then brought this action to recover the monies paid to the Estate of Douglas Forgey. State Farm has been substituted as Plaintiff in Rupert Colmore's place because it paid the settlement monies on his behalf.

## Standard of Review

¶4 Under M. R. App. P. 15(3), this Court may answer a question of law certified to it by another qualifying court. Our review, therefore, is purely an interpretation of the law as applied to the agreed facts underlying the action. *Frontline Proc. Corp. v. Am. Econ. Ins. Co.*, 2006 MT 344, ¶ 18, 335 Mont. 192, 149 P.3d 906 (citing *Rich v. State Farm Mut. Auto. Ins. Co.*, 2003 MT 51, ¶ 11, 314 Mont. 338, 66 P.3d 274).

## Discussion

¶5 *Is an uninsured employer prohibited from bringing either a contribution claim or an indemnity claim against a third party after settling with the injured employee?*

¶6 In Montana, the right to contribution is established by statute, while the right to indemnity is an equitable principle. *Durden v. Hydro Flame Corp.*, 1999 MT 186, ¶¶ 12, 25, 295 Mont. 318, 983 P.2d 943. Contribution and indemnity are similar in that the essential purpose of both is the intent to shift one's losses to another. *See Judd v. Burlington North. and Santa Fe Ry.*, 2008 MT 181, ¶ 25, 343 Mont. 416, 186 P.3d 214

(citing *Durden*, ¶ 25). Contribution and indemnity differ from each other in that contribution distributes loss among joint tortfeasors by requiring each to pay his or her proportionate share of the negligence that caused the plaintiff's injuries, whereas indemnity shifts the entire loss from the one who has been required to pay it to the one who should bear the loss. *Durden*, ¶ 25 (citing *Raisler v. Burlington Northern R. Co.*, 219 Mont. 254, 258, 717 P.2d 535, 537 (1985)). The remedies of contribution and indemnity are mutually exclusive since "[i]ndemnity is an all-or-nothing proposition, representing in effect total contribution." *Durden*, ¶ 26 (quoting *State ex rel. Deere & Co. v. District Court*, 224 Mont. 384, 398, 730 P.2d 396, 405 (1986)).

¶7 The right to contribution, found in § 27-1-703, MCA, was first created by the Montana Legislature in 1977. Sec. 1, Ch. 433, L. 1977. The Legislature's intent in enacting § 27-1-703, MCA, was to allow one tortfeasor to avoid full liability for damages in situations where there are multiple tortfeasors, while at the same time protecting a victim's efforts to recover fully for those damages. *See Plumb v. Fourth Jud. Dist. Court*, 279 Mont. 363, 372, 927 P.2d 1011, 1016-17 (1996). The Legislature substantially amended § 27-1-703, MCA, in 1981, 1987, 1995, and 1997.

¶8 Section 27-1-703(1), MCA, currently provides, in pertinent part:

> Except as provided in subsections (2) and (3), if the negligence of a party to an action is an issue, each party against whom recovery may be allowed is jointly and severally liable for the amount that may be awarded to the claimant but has the right of contribution from any other person whose negligence may have contributed as a proximate cause to the injury complained of.

As noted above, the objective of the doctrine of contribution is to allocate liability among all responsible parties. This Court observed in *Durden* that "[c]ontribution distributes loss among joint tortfeasors by requiring each to pay his or her proportionate share based upon his or her proportion of the negligence which proximately caused the injuries." *Durden*, ¶ 25.

¶9 As also noted above, the right to indemnity, on the other hand, is found in the common law. "The right to indemnity is an equitable principle, based on the general theory that one compelled to pay for damages caused by another should be able to seek recovery from that party." *Durden*, ¶ 25 (citing *Poulsen v. Treasure State Industries, Inc.*, 192 Mont. 69, 82, 626 P.2d 822, 829 (1981)). The purpose of upstream indemnity is to allow a person or entity downstream on the chain of distribution to recover for sums paid to a third party whose injuries were caused by a defective product, thereby placing ultimate responsibility for the defect on the manufacturer. *Jones v. Aero-Chem Corp.*, 680 F. Supp. 338, 339-40 (D. Mont. 1987).

¶10 In this case, State Farm maintains that the Legislature has not enacted any provision, either in the Workers' Compensation Act (the WCA) (Title 39, chapter 71, MCA), or anywhere else, that would bar an action for contribution or indemnity by an uninsured employer against a party who is wholly or partially responsible for injuries suffered by an employee. State Farm contends that the purpose of the doctrine of contribution would be frustrated if an uninsured employer were not allowed to bring a contribution action against a responsible third party. In such a case, the responsible third party would escape liability simply because the employer was uninsured. State Farm

further contends that allowing for an action for contribution or indemnification by an uninsured employer would promote settlement with the employee because the uninsured employer would know that, through the pursuit of a claim for contribution or indemnification, it had the chance of recovering some of the settlement.

¶11 Bush Hog argues, on the other hand, that the WCA cannot be read to permit either contribution or an indemnity claim under the facts presented. Bush Hog contends that the WCA specifies that an uninsured employer loses his immunity from a personal injury lawsuit by an employee for work-related injury or death and loses the defenses of contributory negligence and assumption of the risk. Bush Hog also contends that it would not be equitable to require a stranger to the employer-employee relationship to indemnify an employer for liability that was wholly avoidable if the employer had simply obeyed the WCA and provided coverage for its employees.

¶12 For more than 90 years, the worker-employer relationship has been governed by the WCA.[1] Almost from the WCA's inception, covered employees were entitled to compensation for on-the-job injuries or death regardless of negligence on the part of the employee, a fellow employee, or the employer. *See* R.C.M. 92-201 (1947). In exchange for compensation provided under the WCA for medical treatment and lost income, the employer was granted immunity from tort litigation. *See* R.C.M. 92-203 (1947). Furthermore, the WCA provided the exclusive remedy between the employee and the employer. R.C.M. 92-204 (1947). The WCA precedes by decades Montana's tort reform legislation including § 27-1-703, MCA.

---

[1] The WCA was enacted in 1915. Sec. 1, Ch. 96, L. 1915.

8

¶13     The primary purpose of the WCA is "to provide, without regard to fault, wage-loss and medical benefits to a worker suffering from a work-related injury or disease." Section 39-71-105, MCA.

> The purpose of the [WCA] is to protect both the employer and the employee by incorporating a *quid pro quo* for negligent acts by the employer. The employer is given immunity from suit by an employee who is injured on the job in return for relinquishing his common law defenses. The employee is assured of compensation for his injuries, but foregoes legal recourse against the employer.

*Sherner v. Conoco, Inc.*, 2000 MT 50, ¶ 17, 298 Mont. 401, 995 P.2d 990 (citing *Sitzman v. Schumaker*, 221 Mont. 304, 307-08, 718 P.2d 657, 659 (1986)). The advantage of this system is that

> workers are guaranteed a no-fault recovery while industry, in turn, is relieved of the possibility of enormous recoveries in the tort system . . . . In order for the system to work, however, employers must maintain insurance in compliance with the statutes.

*Auto Parts v. Employment Relations Div.*, 2001 MT 72, ¶ 21, 305 Mont. 40, 23 P.3d 193.

¶14     The WCA requires that all employers enroll in one of three plans. Section 39-71-401, MCA. If an employer fails to enroll as required, it is considered an "uninsured employer." Section 39-71-501, MCA.

¶15     An employer's failure to enroll as required by the WCA results in a number of consequences. First, the Department of Labor and Industry (the DLI) may direct the employer to make the required payments to an injured employee, together with interest and penalties. Section 39-71-506, MCA. Second, the DLI may order the uninsured employer to cease doing business. Section 39-71-507, MCA. Third, the uninsured employer may be subject to liability in a damage action brought by the employee or in an

action to recover the benefits due. Section 39-71-508, MCA. The intent behind permitting a damage action, as well as the other concurrent civil remedies in § 39-71-508, MCA, was intended, at least in part, to "take away incentive from employers not to cover [their employees] . . . ." *Olson v. Daughenbaugh*, 2001 MT 284, ¶ 18, 307 Mont. 371, 38 P.3d 154. Failure to provide the mandated insurance is not merely a civil matter, however. Section 45-7-501(1), MCA, makes it a crime if an employer "avoids the person's responsibility to provide coverage for the person's employees as required by 39-71-401 . . . ."

¶16 If an employee elects to bring a damage action against an uninsured employer, the defenses available to the employer are limited. Those defenses are found in § 39-71-509, MCA, which provides:

> **Action against uninsured employer – limitation of employer's defenses.** If an injured employee or the employee's beneficiaries bring an action to recover damages for personal injuries sustained or for death resulting from personal injuries sustained, it is not a defense for the employer that the:
> (1)  employee was negligent unless the negligence was willful;
> (2)  injury was caused by the negligence of a fellow employee; or
> (3)  employee had assumed the risks inherent in, incident to, or arising out of the employee's employment or arising from the failure of the employer to provide and maintain a reasonably safe place to work or reasonably safe tools or appliances.

¶17 Section 39-71-509, MCA, establishes that any negligence by the employee, or even assumption of the risk by the employee, is not a defense in the case against the employer. Thus, the uninsured employer is either not liable or is 100% liable for the employee's personal injury or death claim. This makes application of the comparative negligence statute impossible. The comparative negligence statute does not provide any

10

way to apportion responsibility among multiple entities when the employer is 100% responsible, as in this case.[2] Moreover, if the Legislature intended to allow uninsured employers to take advantage of comparative negligence and the associated right of contribution, it would have to amend § 27-1-703(4), MCA, to instruct the trier of fact how to deal with one defendant who has no right to plead comparative negligence versus everyone else to whom the trier of fact is charged with allocating percentages of negligence.

¶18 As indicated, the WCA covers the rights between the employee and the employer, as well as the rights of each to make claims against third parties for work-related injuries. The WCA gives the employer immunity from personal injury claims by its employees except where the employer is guilty of willful or malicious conduct or where the employer fails to provide the coverage required by the WCA. Sections 39-71-411, -413 and -509, MCA. The WCA gives "insurers" (including self-insured employers) a right of subrogation against third parties who are liable for an employee's injuries. Section 39-71-414, MCA. That right of subrogation includes an insurer's right to bring an independent action if the employee has not done so within the first year of his or her injury. Section 39-71-414(3), MCA.

¶19 The right of subrogation is accorded only to an "insurer," which is defined in the WCA as "an employer bound by compensation plan No. 1, an insurance company transacting business under compensation plan No. 2, or the state fund under

---

[2] Colmore admitted that his negligence in providing the posthole digger to Forgey caused Forgey's death.

11

compensation plan No. 3." Section 39-71-116(14), MCA. Since an uninsured employer does not qualify as an "insurer" under any of these three options, the uninsured employer has no statutory right of subrogation. The only relief provided to the uninsured employer under the WCA is that "[a]ny actual monetary compensation received by judgment or settlement by the injured employee or the employee's beneficiaries under 39-71-509 or 39-71-515 may be offset by the uninsured employer against the employer's remaining liability under those sections." Section 39-71-518, MCA.

¶20 Because the Legislature has already provided a mechanism for employers and their workers' compensation insurers to recover from third parties—the right to subrogation (a mechanism that excludes uninsured employers)—it would be inappropriate for this Court to read different recovery provisions into the WCA. Section 1-2-101, MCA ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.").

¶21 We agree with Bush Hog that it is not equitable to require a stranger to the employer-employee relationship to indemnify an employer for liability that was wholly avoidable if the employer had simply obeyed the WCA and provided coverage for its employees. But for Colmore's failure to provide workers' compensation coverage for Forgey, Colmore would have had no liability to Forgey.

¶22 The very existence of the underlying negligence action and the resulting settlement were directly attributable to Colmore's own violation of the workers' compensation laws of this State, even if the underlying physical injuries to the uninsured

12

employee were caused by negligence. Allowing an action for contribution or indemnity in this situation would relieve an uninsured employer of the responsibility and consequences of his own violation of the workers' compensation laws.

¶23 The objective of the WCA is to provide no-fault, wage-loss benefits to the worker who suffers work-related injuries. Section 39-71-105, MCA. This system fails to the extent that the employer refuses to provide workers' compensation insurance for his employee in accordance with the WCA. And, if this employer is then allowed to seek indemnity or contribution from a third party in order to reduce the damages he owes to the injured employee, the employer has no incentive to comply with the WCA in the first instance. Cost/benefit should not inform, much less justify, the employer's decision to not purchase workers' compensation insurance. Indeed, if the employer chooses to roll the dice and loses, then his recompense should be a financially painful experience.

¶24 Based on the foregoing, our answer to the certified question is: Yes, an uninsured employer is prohibited from bringing either a contribution claim or an indemnity claim against a third party after settling with the injured employee.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE
/S/ LOREN TUCKER
District Judge Loren Tucker
sitting for Justice Brian Morris

13