JUSTICE BAKER
delivered the Opinion of the Court.
¶1 The United States District Court for the District of Montana, Helena Division, the Honorable Donald W. Molloy presiding, certified the following question to this Court:
¶2 Is obesity that is not the symptom of a physiological condition a “physical or mental impairment” as it is used in Montana Code Annotated § 49-2-101(19)(a)?
¶3 We accepted the certified question and now answer with a qualified “yes.”
PROCEDURAL AND FACTUAL BACKGROUND
¶4 On February 27,2009, Eric Feit filed an administrative complaint with the Montana Department of Labor and Industry (Department) alleging that Burlington Northern Santa Fe Railway Company (BNSF) illegally discriminated against him because of perceived disability-obesity. In an order dated March 10,2010, a hearing officer for the Department entered summary disposition in favor of Feit, concluding that “BNSF engaged in and is liable for a discriminatory refusal to hire Feit because it regarded him as disabled” and awarded damages for lost wages and benefits, prejudgment interest, and emotional distress. BNSF filed an appeal with the Montana Human Rights Commission, which issued an order on December 6, 2010, affirming the Department’s decision. BNSF then petitioned the U.S. District Court to review whether it violated the Montana Human Rights Act (MHRA) by refusing to hire Feit because of his obesity. Both parties filed motions for summary judgment, at which time the U.S. District Court certified its question to this Court.
¶5 In accordance with M. R. App. P. 15(6)(b), the U.S. District Court certified the following facts:
1. BNSF offered Eric Feit a conditional offer of employment as a conductor trainee. The employment was conditioned upon successful completion of a physical examination, drug screening, *361 background investigation, proof of employment eligibility, and BNSF’s Medical History Questionnaire.
2. On February 6,2008, BNSF informed Feit he was not qualified for his “safety sensitive” position because of the “significant health and safety risks associated with extreme obesity.”
3. BNSF told Feit he would not be considered for the job unless he either lost 10% of his body weight, or successfully completed additional physical examinations at his own expense. Regardless of the test results, BNSF did not guarantee Feit a job.
4. With the exception of a sleep study test, Feit successfully completed the additional physical exams BNSF requested. The sleep test cost at least $1,800, and Feit could not afford the test.
5. Because BNSF informed Feit that it would not consider him for the conductor trainee position unless he completed the sleep study, Feit set out to lose 10% of his weight.
6. A genuine dispute exists regarding whether BNSF received documentation of Feit’s weight loss.
7. On February 27,2009, Feit filed a complaint with the Montana Department of Labor and charged BNSF [with] discriminating against him based on a physical or mental disability.
STANDARD OF REVIEW
¶6 “Under M. R. App. P. 15(3), this Court may answer a question of law certified to it by another qualifying court. Our review, therefore, is purely an interpretation of the law as applied to the agreed facts underlying the action.” State Farm Fire & Cas. Co. v. Bush Hog, LLC, 2009 MT 349, ¶ 4, 353 Mont. 173, 219 P.3d 1249.
DISCUSSION
¶7 This case requires the Court to answer the narrow question posed. It is not the job of this Court to determine questions of fact or to apply the law to the facts presented to us. In his brief, Feit requests that we reformulate the certified question. Although this Court may reformulate a certified question under M. R. App. P. 15(4), Feit’s proffered reformulation essentially asks us to resolve the ultimate issue in his dispute with BNSF, which we decline to do. Further, Feit asks the Court to consider facts outside those certified by the U.S. District Court in its order. This Court’s August 16, 2011 order accepting the certified question did so “as formulated on the relevant facts set forth in Judge Molloy’s certification of the question” and we find it unnecessary to consider information outside that statement of *362 facts.
¶8 The MHRA makes it unlawful for an employer to refuse employment to a person because of “physical or mental disability ... when the reasonable demands of the position do not require a[] ... physical or mental disability ... distinction.” Section 49-2-303(l)(a), MCA. A “physical or mental disability” is defined as:
(i) a physical or mental impairment that substantially limits one or more of a person’s major life activities;
(ii) a record of such an impairment; or
(iii) a condition regarded as such an impairment.
Section 49-2-101(19)(a), MCA (emphasis added). The U.S. District Court’s question asks us specifically to analyze “physical or mental impairment,” not the broader definition of disability. As Judge Molloy observed, this Court has not had occasion to interpret the meaning of the term “impairment.” To construe this Montana statute, we look to guidance from federal discrimination law under the Americans with Disabilities Act (ADA). McDonald v. Dept. of Envtl. Quality, 2009 MT 209, ¶ 39, n. 4, 351 Mont. 243, 214 P.3d 749; Campbell v. Garden City Plumbing & Heating, Inc., 2004 MT 231, ¶¶ 12-14, 322 Mont. 434, 97 P.3d 546; Pannoni v. Bd. of Trustees, 2004 MT 130, ¶ 28, 321 Mont. 311, 90 P.3d 438. The Montana Legislature has indicated its clear intent that the MHRA be interpreted consistently with federal discrimination statutes and case law. In particular, the definition of physical or mental disability is substantially identical to that in the ADA. 42 U.S.C. § 12102. And the preamble to the 1991 amendments to the MHRA states that the “definitions previously adopted lack clarity and are inconsistent with definitions used in federal civil rights statutes and court interpretations on the subject.” 1991 Mont. Laws ch. 241, 551. We turn, therefore, to federal law and interpretation of it to inform our analysis.
¶9 We have relied on federal case law as well as the federal Equal Employment Opportunity Commission (EEOC) regulations and interpretive guidelines in construing Montana’s discrimination laws. Butterfield v. Sidney Pub. Schs., 2001 MT 177, ¶¶ 21, 23, 306 Mont. 179, 32 P.3d 1243; Reeves v. Dairy Queen, Inc., 1998 MT 13, ¶¶ 23-25, 287 Mont. 196, 953 P.2d 703; Hafner v. Conoco, Inc., 268 Mont. 396, 402, 886 P.2d 947, 950-51 (1994). An interpretation of federal law by the federal agency that administers it is afforded great deference. Sleath v. West Mont Home Health Servs., 2000 MT 381, ¶ 37, 304 Mont. 1, 16 P.3d 1042 (citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467U.S. 837, 844, 104 S. Ct. 2778, 2782 (1984)).
*363 ¶10 Congress recently amended the ADA by passing the ADA Amendments Act of 2008 (ADAAA). ADA Amendments Act of 2008, Pub. L. No. 110-325,122 Stat. 3553 (2008). Congress amended specific provisions of the ADA not relevant here, but in so doing, also affirmed the purpose of the ADAAA to reinstate “a broad scope of protection to be available under the ADA,” and clarified its intention that “the definition of disability... shall be construed in favor of broad coverage ... to the maximum extent permitted” by the terms of the Act. 122 Stat. at 3554-55; see also 29 C.F.R. § 1630.1(c)(4) (2011). The ADAAA provides: “Congress finds that [federal cases] have narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect.” While the legislative history suggests that Congress did not expect the EEOC’s current regulatory definition of these terms to change (29 C.F.R. pt. 1630 app. § 1630.2(h) (2011)), Congress did express its specific intent that “the question of whether an individual’s impairment is a disability under the ADA should not demand extensive analysis.” 122 Stat. at 3553-54. Notably, Congress did not amend the substantive definition of “disability” in the federal Act, except to add new subparagraphs clarifying the definitions of “major life activities” and “regarded as having such an impairment.” 42 U.S.C. § 12102(2), (3). Thus, insofar as they are relevant to the certified question, the Montana and federal definitions of “disability” remain substantively identical despite the passage of the ADAAA.
¶11 Neither the original ADA nor the ADAAA defines “physical or mental impairment.” The EEOC defines “impairment” as “[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine.” 29 C.F.R. § 1630.2(h)(1) (2011). The EEOC regulations in this context define “impairment” in the same manner as those in place prior to the ADAAA, with the addition of two body systems (circulatory and immune). Compare 29 C.F.R. § 1630.2(h)(1) (2011) with 34 C.F.R. § 104.3(j)(2)(i) (2011); Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. pt. 1630 app. § 1630.2(h) (2011).
¶12 The EEOC’s Interpretive Guidance distinguishes between conditions that are impairments and conditions that are simply physical characteristics: “The definition of the term ‘impairment’ does *364 not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within ‘normal’ range and are not the result of a physiological disorder.” 29 C.F.R. pt. 1630 app. § 1630.2(h) (2011). The Interpretive Guidance thus suggests that “impairment” requires a “physiological disorder” only if a person’s weight is “within ‘normal’ range.” By using the conjunctive “and,” the regulation excludes weight from the definition of impairment only if it is both “within ‘normal’ range” and “not the result of a physiological disorder.” BNSF points out that most federal courts to have considered the issue have held that obesity is not an impairment unless it is the result of a physiological disorder or condition. See EEOC v. Watkins Motor Lines, Inc., 463 F.3d 436, 443 (6th Cir. 2006) (holding “to constitute an ADA impairment, a person’s obesity, even morbid obesity, must be the result of a physiological condition”); Andrews v. Ohio, 104 F.3d 803, 810 (6th Cir. 1997) (holding the charging parties had not demonstrated their weight was the result of a physiological condition under the ADA and affirming a motion to dismiss their claims); Francis v. City of Meriden, 129 F.3d 281, 286-87 (2d Cir. 1997) (holding that physical characteristics, such as weight, that do not result from a physiological disorder are not considered “impairments”). These courts have held that “physical characteristics that are ‘not the result of a physiological disorder’ are not considered ‘impairments’ for the purposes of determining either actual or perceived disability.” Watkins Motor Lines, Inc., 463 F.3d at 442 (quoting Andrews, 104 F.3d at 808-09). BNSF urges us to follow this line of cases and answer the certified question in the negative. However, the cases on which BNSF relies all were decided before passage of the ADAAA. In that Act, Congress instructed the courts they were interpreting the statute too restrictively and expressed its specific intent that determination of disability not demand extensive analysis. 122 Stat. at 3553-54.
¶13 The EEOC’s Compliance Manual, interpretations of the law for EEOC employees charged with investigating discrimination claims, states: “[Njormal deviations in height, weight, or strength that are not the result of a physiological disorder are not impairments.....At extremes, however, such deviations may constitute impairments.” EEOC Compliance Manual § 902.2(c)(5), http://www.eeoc.gov/policy/docs/ 902cm.html#902.2c5 (accessed on June 28, 2012) (citations omitted). The Compliance Manual was last updated on November 21, 2009, subsequent to the passage and effective date of the ADAAA. Although the Compliance Manual has not been formally adopted and made part of the Code of Federal *365 Regulations, it does provide insight into the agency’s interpretation. The United States Supreme Court has expressly recognized the usefulness of the EEOC Compliance Manual. Fed. Express Corp. v. Holowecki, 552 U.S. 389, 399, 128 S. Ct. 1147, 1156 (2008) (citing cases and noting the EEOC’s compliance manuals, though not binding on the courts, “reflect ‘a body of experience and informed judgment to which courts and litigants may properly resort for guidance’”). This Court affords an agency’s interpretation of its rule “great weight” and defers to that interpretation unless “plainly inconsistent” with the spirit of the rule. Easy v. Mont. Dept. of Nat. Resources & Conserv., 231 Mont. 306, 309, 752 P.2d 746, 748 (1988) (affirming a state agency’s interpretation of its hiring policy).
¶14 While the EEOC notes that “being overweight, in and of itself’ is generally not an impairment, “severe obesity, which has been defined as body weight more than 100% over the norm ... is clearly an impairment.” EEOC Compliance Manual § 902.2(c)(5)(h). The EEOC’s interpretation supports a conclusion that weight outside “normal range” may constitute a physiological condition within the definition of impairment if it “affects one or more body systems.” This conclusion recently has been adopted by some federal courts. See EEOC v. Resources for Human Dev., Inc., 827 F. Supp. 2d 688, 694 (E.D. La. 2011) (concluding, in reliance on the EEOC Compliance Manual, that “if a charging party’s weight is outside the normal range-that is, if the charging party is severely obese-there is no explicit requirement that obesity be based on a physiological impairment”); Lowe v. American Eurocopter, LLC, 2010 U.S. Dist. LEXIS 133343, ** 23, 25 (N.D. Miss. Dec. 16, 2010) (denying motion to dismiss plaintiffs ADA claim, noting the “substantial expansion of the ADA by the ADAAA” and stating cases requiring that obesity be a product of a physiological condition “were all before the ADAAA took effect”); but see Lescoe v. Pa. Dept. of Corrects., 2011 U.S. Dist. LEXIS 34325, **10-13 (M.D. Pa. March 30, 2011) (upholding summary judgment in favor of the defendant on an ADA claim because plaintiff had not demonstrated his obesity was a physical or mental impairment, but not addressing the ADAAA). As noted in the EEOC Compliance Manual, “[t]he mere presence of an impairment does not automatically mean that an individual has a disability. Whether severe obesity rises to the level of a disability will turn on whether the obesity substantially limits, has substantially limited, or is regarded as substantially limiting, a major life activity.” *366 EEOC Compliance Manual § 902.2(c)(5)(ii) n. 16;[1] see also Sibilla v. Follett Corp., 2012 U.S. Dist. LEXIS 46255, *26 (E.D.N.Y. March 30, 2012) (even under the ADAAA, “[t]he fact that an employer regards an employee as obese or overweight does not necessarily mean that the employer regards the employee as suffering a physical impairment.”). Prior to the ADAAA, the EEOC’s Interpretive Guidance included the statement that, “except in rare circumstances, obesity is not considered a disabling impairment.” 29 C.F.R. pt. 1630 app. § 1630.2(j) (2008). Notably, this language has been omitted from the 2011 version.
¶15 BNSF argues that Montana has not expressly adopted the statutory changes contained in the ADAAA, and therefore, we should not consider the federal amendments or the EEOC’s interpretations thereof. Moreover, BNSF contends the ADAAA is not retroactive and therefore interpretation of it is not applicable here, citing Becerril v. Pima Co. Assessor’s Office, 587 F.3d 1162, 1164 (9th Cir. 2009), for the proposition that Congress did not intend the ADAAA to apply retroactively. These arguments overlook the point that we are interpreting Montana statutes, not the ADAAA, and that we are construing “impairment” for the first time. They further overlook the fact that the definition of “disability” was not substantively amended with respect to the meaning of “impairment.” Our prior case law directs us to use federal interpretations as guidance, without confining our review to authority in place on the date the MHRA was first enacted. Hafner, 268 Mont. at 402, 886 P.2d at 951 (stating the MHRA is “patterned after” federal law and referencing federal case law decided after the passage of the MHRA); McDonald, ¶ 39 (citing current federal regulations). Our use of contemporaneous federal interpretations is therefore appropriate as it fulfills the legislature’s directive that Montana law be interpreted consistently with federal discrimination laws. BNSF acknowledged during oral argument that this Court is not applying the ADAAA here. Thus, we are not giving retroactive effect to a federal statute whose application is expressly prospective. Rather, given the development of the law, we construe Montana’s act in a manner that comports with stated congressional intent.
*367 ¶16 Taken together, the ADA, ADAAA, and the EEOC’s interpretation are clear and provide persuasive guidance in interpreting the MHRA. Based on the foregoing, we answer the certified question as follows: Obesity that is not the symptom of a physiological disorder or condition may constitute a “physical or mental impairment” within the meaning of Montana Code Annotated § 49-2-101(19)(a) if the individual’s weight is outside “normal range” and affects “one or more body systems” as defined in 29 C.F.R. § 1630.2(h)(1) (2011).
JUSTICES NELSON, WHEAT and COTTER concur.

 It appears this statement has not been updated since adoption of the ADAAA. Under the amendments, an individual meets the requirement of “being regarded as having such an impairment” by establishing that he or she has been subjected to discrimination “because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.” 42 U.S.C. § 12102(3)(A) (emphasis added).